The State ex rel. Skaggs et al. *v.* Brunner, Secy. of State, et al.

[Cite as *State ex rel. Skaggs v. Brunner,*
120 Ohio St.3d 506, 2008-Ohio-6333.]

(No. 2008–2206—Submitted December 2, 2008—Decided December 5, 2008.)

**Per Curiam.**

{¶ 1} This is an original action for a writ of mandamus to (1) compel respondent Secretary of State Jennifer L. Brunner to correct her allegedly erroneous interpretation of R.C. 3505.183(B)(1)(a) and to advise respondent Franklin County Board of Elections that any provisional ballot must include both the voter's name and signature in the statutorily required affirmation and that if it does not, it is not eligible to be counted, and (2) compel the secretary of state and the board of elections to reject any provisional ballots as not eligible to be counted if they do not include the name and signature of the voter on the affirmation required by R.C. 3505.183(B)(1)(a). We hold that the secretary of state acts improperly when she instructs all county boards of elections to apply election law according to one standard before an election and instructs one county to apply a conflicting standard after the election and after certification of ballots in other counties is complete. We therefore grant the requested writ of mandamus as it relates to the secretary of state's conflicting directives. We also hold that while the secretary of state did not issue conflicting directives on the issue of whether provisional ballots that contain a name but no signature and those that contain a name and signature in an incorrect place should be counted, her directive that such votes should be counted was unreasonable; we therefore grant the writ of mandamus on those issues as well.

## Provisional–Ballot Procedure in Franklin County

{¶ 2} Under R.C. 3505.181, certain individuals shall be permitted to cast a provisional ballot at an election, including an eligible voter whose name does not appear on the official list of eligible voters for the polling place, an individual who is unable to provide the specified forms of identification, and an individual who previously requested an absentee ballot for that election. See R.C. 3505.181(A).

{¶ 3} If an individual desires to cast a provisional ballot, the board of elections provides a provisional ballot form that it prepared and a ballot. The board's form, which is designated an "application," specifically requires the voter to print the voter's name and to sign an affirmation. The provisional ballot form is printed on an envelope, which the voter seals after inserting the ballot.

{¶ 4} Upon receipt of the provisional ballots, the board of elections uses the information provided by the voters to determine whether they are eligible to vote and to have their votes counted. R.C. 3505.183(B)(1) and 3505.181(B)(4). Under R.C. 3505.183(D), "[n]o provisional ballots shall be counted in a particular county until the board determines the eligibility to be counted of all provisional ballots cast in that county * * * for that election." The board of elections thus cannot open and count any provisional ballot until the eligibility of each ballot has been determined. Once a provisional ballot is separated from its envelope, the ballots are then commingled to protect voter secrecy, and it becomes impossible to track the votes of any provisional voter.

## Provisional–Ballot Affirmations: Secretary of State's Initial Instructions

{¶ 5} This case involves provisional-ballot forms on which the voter failed to provide both the voter's name and signature. On March 31, 2008, Brian Shinn, the assistant general counsel for the secretary of state, responded by e-mail to questions from elections board officials concerning provisional ballots. Shinn advised the board of elections that a provisional ballot could not be counted if the voter signed the affirmation statement but did not print his or her name on the form and that *both* the voter's *name and signature* were required in order for the ballot to be counted:

{¶ 6} "Voter did not print his or her name on column one but signed the provisional ballot affirmation statement. The ballot cannot be counted unless the voter's name appears somewhere on the provisional ballot affirmation envelope written by the voter or a poll worker. Name AND signature are required by R.C. 3505.183(B)(1)(a) as stated above."

{¶ 7} On October 24, 2008, in *Northeast Ohio Coalition for the Homeless v. Brunner*, S.D.Ohio No. C2–06–896, 2008 WL 4449514, a federal district court issued a consent order adopting Secretary of State Directive No. 2008–101, which

settled part of that case. The secretary's directive provided guidelines for determining the validity of provisional ballots, including the following:

{¶ 8} "If **ANY** of the following apply, board staff responsible for processing provisional ballots shall recommend to the board that a provisional ballot **not** be counted, and a board of elections **shall neither open nor count** the provisional ballot:

{¶ 9} " * * *

{¶ 10} "The individual did not provide the following:

{¶ 11} "(1) His or her name and signature as the person who cast the provisional ballot;

{¶ 12} "(2) A statement that he or she, as the person who cast the provisional ballot, is a registered voter in the jurisdiction in which he or she cast the provisional ballot; and

{¶ 13} "(3) A statement that he or she, as the person who cast the provisional ballot, is eligible to vote in the particular election in which he or she cast the provisional ballot;

{¶ 14} "or

{¶ 15} "(4) His or her name recorded in a written affirmation statement entered either by the individual or at the individual's direction recorded by an election official." (Boldface sic.) Secretary of State Directive No. 2008–101 at 8.

{¶ 16} On October 28, 2008, pursuant to a court order issued in *Northeast Ohio Coalition for the Homeless,* 2008 WL 4449514, the secretary of state issued Directive No. 2008–103, which instructed boards of elections that "provisional ballots may not be rejected for reasons that are attributable to poll worker error."

{¶ 17} Based on the secretary of state's instructions in Secretary of State Directive 2008–101 and her assistant general counsel's March 2008 e-mail instructions, the office of the Franklin County Prosecuting Attorney advised the board of elections that a provisional-ballot voter must provide both the voter's name and signature to be eligible to have the vote counted. The board was prepared to follow these instructions.

## Unofficial Returns and Modified Instructions

{¶ 18} The board of elections released its initial unofficial returns for the November 4, 2008 election, and those returns showed three relatively close races, including those for the 15th Congressional District between Steve Stivers and Mary Jo Kilroy and for two Ohio House of Representatives districts. Over 27,000 provisional ballots were cast in Franklin County in the November 4 general election, and the outcome of these three races may be determined by these ballots.

{¶ 19} On November 10, Bob DeRose, an attorney for the Kilroy for Congress Committee, sent an e-mail to several people, including the director and deputy director of the Franklin County Board of Elections and the secretary of state's assistant general counsel, challenging the board's position, which was purportedly based on the secretary of state's instructions, that "provisional ballots that either lack a printed name but have a signature in the affirmation or have a printed name but lack a signature in the affirmation, will not be counted." DeRose claimed that "any provisional ballot that lacks a printed name but has a signature, or that has a printed name but lacks a signature, or lacks a printed name and has no signature was cast on November 4, 2008 as a result of poll worker error" and that pursuant to Secretary of State Directive 2008–103, these ballots could not be rejected. DeRose further noted that according to their information, approximately 620 of the provisional ballots contain a signature but not a printed name and approximately 30 of the ballots have a printed name but not a signature.

{¶ 20} In response to DeRose's e-mail, Shinn modified his previous instructions and said that for the most part, these provisional ballots lacking both voters' names or signatures should be counted.

{¶ 21} By a November 12, 2008 e-mail, Shinn notified the board of elections that the secretary of state agreed with his earlier "advice that a provisional ballot that contains the signature of a voter but not the written name MUST BE COUNTED if the person is a registered elector, the person voted in the correct precinct, and the person was not required to provide additional information to the board [and] failed to do so."

{¶ 22} On November 14, the board of elections met to consider whether the different groups of disputed provisional ballots (1) with names but not signatures on the affirmation, (2) with signatures but not names on the affirmation, and (3) with names and signatures, but not in the correct locations on the affirmation should be considered eligible to be opened and counted. The board of elections deadlocked two-to-two on each of the motions that these categories of provisional ballots be deemed eligible to be counted. The secretary of state is authorized to break these tie votes pursuant to R.C. 3501.11(X), and on November 20, the secretary voted to grant the motions and to find all of the disputed provisional ballots to be valid. These disputed categories of provisional ballots include approximately 1,000 provisional ballots.

{¶ 23} In other counties, including Union and Madison Counties, the boards of elections followed the preelection instructions of the secretary of state in Directive 2008–101 and disqualified provisional ballots if the voter failed to provide both a printed name and a signature on the affirmation. Evidently, the secretary of state did not provide her changed directive on the eligibility of provisional ballots to counties other than Franklin County.

## Mandamus Case: Filing and Removal

{¶ 24} Relator Dana Skaggs is a Franklin County elector who voted in the November 4, 2008 election, and relator Kyle Fannin is a Franklin County elector who voted by provisional ballot in the November 4 election.

{¶ 25} On November 13, relators filed this action for a writ of mandamus to compel the secretary of state to instruct the boards of elections that any provisional ballot must include both the voter's name and signature in the statutorily required affirmation in order to be eligible to be counted and to compel the secretary of state and the Franklin County Board of Elections to reject any provisional ballot that does not include both the voter's name and signature.[1]  Relators also filed motions for expedited consideration and for temporary injunctive relief pending the court's consideration of their request for extraordinary relief in mandamus.

{¶ 26} The secretary of state filed a notice removing this case to the United States District Court for the Southern District of Ohio pursuant to Sections 1441(b) and 1443(2), Title 28, U.S.Code. The federal district court denied relators' and the board's motions to remand the case to this court. *Ohio ex rel. Skaggs v. Brunner* (S.D.Ohio 2008), 588 F.Supp.2d 819.  The court subsequently granted the secretary of state's motion for summary judgment and dismissed the case.

{¶ 27} On appeal, the United States Court of Appeals for the Sixth Circuit reversed the judgment of the federal district court and held that the district court erred in denying relators' and the board's motions to remand the case to this court.  *Ohio ex rel. Skaggs v. Brunner* (C.A.6, 2008), 549 F.3d 468.  On that same date, pursuant to our ancillary jurisdiction to grant a stay in original actions, we granted relators' motion to stay the counting of the provisional ballots pending our resolution of this case.

{¶ 28} The parties have now submitted their briefs and evidence, and the secretary of state and the intervening respondent, the Ohio Democratic Party, also filed answers.  This cause is now before the court for our expedited consideration and determination.

### Mandamus

{¶ 29} "To be entitled to the requested writ, relators must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of

---

1.  In their complaint, relators also requested a writ of mandamus compelling respondents to reject any provisional ballot that did not include the required identification verification information required by R.C. 3505.18, but in their merit brief filed here, relators specify that they do not challenge any provisional ballot based on the identification affirmation.

the secretary of state to provide it, and the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Heffelfinger v. Brunner,* 116 Ohio St.3d 172, 2007-Ohio-5838, 876 N.E.2d 1231, ¶ 13. "[I]f the secretary of state 'has, under the law, misdirected the members of the boards of elections as to their duties, the matter may be corrected through the remedy of mandamus.'" *State ex rel. Colvin v. Brunner,* 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 20, quoting *State ex rel. Melvin v. Sweeney* (1950), 154 Ohio St. 223, 226, 43 O.O. 36, 94 N.E.2d 785.

## General Duties of the Secretary of State

{¶ 30} The secretary of state is the state's chief election officer and has duties to "[i]ssue instructions by directives and advisories * * * to members of the boards as to the proper methods of conducting elections," "[p]repare rules and instructions for the conduct of elections," "[d]etermine and prescribe the forms of ballots," and "[c]ompel the observance by election officers in the several counties of the requirements of the election laws." R.C. 3501.05(B), (C), (G), and (M). The board of elections must perform "duties as prescribed by law or the rules, directives, or advisories of the secretary of state." R.C. 3501.11(P).

{¶ 31} Relators claim that the secretary of state has a duty enforceable in mandamus under these and other statutory provisions to direct the board of elections not to count the disputed provisional ballots.

## Request for Relief

{¶ 32} Relators assert that they are entitled to the requested extraordinary relief because the secretary of state, through her postelection instructions, misdirected the Franklin County Board of Elections that it should count the provisional ballots that do not include both the voter's name and signature in the statutorily required affirmation.

{¶ 33} The Help America Vote Act, Section 15301 et seq., Title 42, U.S.Code, authorizes the states to determine "whether a provisional ballot will be counted as a valid ballot." *Sandusky Cty. Democratic Party v. Blackwell* (C.A.6, 2004), 387 F.3d 565, 577; Section 15482(a)(4), Title 42, U.S.Code. The General Assembly has provided rules concerning this determination in R.C. 3505.181, 3505.182, and 3505.183.

{¶ 34} This case involves the validity of three categories of provisional ballots cast at the November 4 general election in Franklin County: (1) ballots with affirmations that contain printed names but no signatures, (2) ballots with affirmations that contain signatures but no printed names, and (3) ballots that contain both printed names and signatures, but one or both are not located in the correct place on the affirmation. The disputed ballots comprise about 1,000 of

the roughly 27,000 provisional ballots cast in Franklin County for the November 4 general election.

{¶ 35} Relators, two Franklin County voters, request that all three categories of disputed provisional ballots be deemed invalid and not be counted. Respondent Secretary of State Jennifer L. Brunner, the intervening respondent, Ohio Democratic Party, and amici curiae, the ACLU Voting Rights Project and ACLU of Ohio, request that the court hold that all three categories be ruled valid and be counted. Respondent Franklin County Board of Elections defers to the secretary of state's position because of her tie-breaking decisions on the disputed provisional ballots. We address the three categories of provisional ballots in order.

### Ballots With Printed Names But With No Signatures

{¶ 36} The first category of provisional ballots at issue consists of ballots on which the individual printed his or her name in the affirmation but did not sign the affirmation. According to DeRose, approximately 30 provisional ballots fall in this category. The most relevant statute on this issue is R.C. 3505.183(B)(1), which states:

{¶ 37} "To determine whether a provisional ballot is valid and entitled to be counted, the board shall examine its records and determine whether the individual who cast the provisional ballot is registered and eligible to vote in the applicable election. The board shall examine the information contained in the written affirmation executed by the individual who cast the provisional ballot under division (B)(2) of section 3505.181 of the Revised Code. *If the individual declines to execute such an affirmation, the individual's name,* written by either the individual or the election official at the direction of the individual, *shall be included in a written affirmation in order for the provisional ballot to be eligible to be counted; otherwise, the following information shall be included in the written affirmation in order for the provisional ballot to be eligible to be counted:*

{¶ 38} "(a) *The individual's name and signature;*

{¶ 39} "(b) A statement that the individual is a registered voter in the jurisdiction in which the provisional ballot is being voted;

{¶ 40} "(c) A statement that the individual is eligible to vote in the election in which the provisional ballot is being voted." (Emphasis added.)

{¶ 41} Under this statute, the affirmation must include the individual's name and signature to be eligible to be counted, unless the individual declines to execute the affirmation. In the latter case, the individual's name must appear in "a" written affirmation to be eligible to be counted.

{¶ 42} We must first determine whether the secretary of state's directives on this matter before and after the election are consistent with each other. As set

forth above, in Directive 2008–101, the secretary stated that a provisional ballot shall not be counted if the individual casting the ballot did not provide either (1) his or her name and signature in the affirmation or (2) his or her name, written by the individual or by an election official at the individual's direction, in a written affirmation statement. Directive 2008–101 at 8.

{¶ 43} After the election, in her decision breaking the tie between the members of the Franklin County Board of Elections, the secretary again stated that provisional ballots that contain only a printed name in the affirmation section may be counted. In that decision, the secretary expanded her previous directive by introducing the concept of poll-worker error. She noted that an affirmation that includes only a printed name and not a signature will be valid if the individual has declined to execute the affirmation under R.C. 3505.183(B)(1) and that, in the event that an individual makes such a declination, the poll worker must record that the individual has done so pursuant to R.C. 3505.181(B)(6): "[T]he failure of a poll worker to do so constitutes poll worker error. Poll worker error cannot serve as a basis for rejecting a provisional ballot under Directive 2008–103 and the October 27, 2008 federal court order. Thus, provisional ballots containing the printed name of a voter in the affirmation form but not signature must be counted." In short, the secretary determined that all such ballots must be counted because it is *possible* that the individual declined to execute the affirmation but the poll worker failed to record that declination, and the voter should not be penalized for poll-worker error.

{¶ 44} Although the secretary's latter opinion, issued on November 20, 2008, is clearly broader than Directive 2008–101, issued on October 24, 2008, we find that they are at least arguably consistent with each other. Therefore, we must next determine whether the secretary of state's directives in this regard were unreasonable under the law. See *State ex rel. Brinda v. Lorain Cty. Bd. of Elections*, 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, ¶ 30.

{¶ 45} The relators argue that the statute requires the voter to place both a name and a signature on the ballot envelope for the affirmation to be valid and that it cannot be presumed that an individual declined to sign the affirmation (and is therefore exempt from it) merely because no signature exists. Contrarily, the secretary, and Justice Lanzinger in dissent, argue that there is no way to tell whether an individual declined to sign the affirmation or merely failed to do so, and that in the face of such uncertainty, we must err in favor of counting all such ballots to avoid disenfranchising voters.

{¶ 46} At first blush, that position seems reasonable, but it does not include consideration of other sections of the Revised Code that bear directly on the question before us. Although we agree that the relevant statutes are not the model of clarity, the secretary's interpretation requires us to presume that

numerous statutory subsections were not followed by poll workers from both political parties and to in effect assume no error by any voter. Such a conclusion defies common sense and, more important, would be a disservice to the many persons of both political parties who are trained to follow the law in their duties as poll workers.

{¶ 47} There are several acts that must occur before the vote of an individual who wishes to decline to sign the affirmation will be counted. First, the individual (or an election official acting at the individual's direction) must include his or her name "in a written affirmation." R.C. 3505.183(B)(1). Although it is unclear what form this affirmation must take, the provisional-ballot affirmation is a written affirmation, so it qualifies. Next, pursuant to R.C. 3505.182, "[i]f the individual declines to execute the affirmation, an appropriate local election official shall comply with" R.C. 3505.181(B)(6), which states that "the appropriate local election official shall record the individual's name and include that information with the transmission of the ballot under division (B)(3) of this section." In fact, the secretary, in her decision breaking the tie vote in the Franklin County Board of Elections on this issue, said: "If a voter declines to execute an affirmation, the election official must record the voter's name and note on the provisional ballot envelope that the voter declined to execute an affirmation."

{¶ 48} Finally, "[a]n election official at the polling place shall transmit * * * the individual's name if the individual declines to execute such an affirmation to an appropriate local election official for verification," and the official receiving the individual's name must then verify whether the individual is eligible to vote before his or her vote will be counted. R.C. 3505.181(B)(3) and (4).

{¶ 49} The statutory scheme designates the process to be followed when a voter wishes to decline to sign the affirmation for some reason. Only one of these statutorily mandated actions, the individual's simply putting his or her name in the affirmation without a signature, occurred here. The only indication here that the provisional voters at issue actually *declined* to complete the affirmation is the fact that their affirmations contained no signature. There is no evidence that the relevant elections officials noted anywhere on the ballot envelopes that the provisional voters at issue here declined to execute the affirmation, that the official transmitted that information to a separate election official, or that the receiving official verified the information, all of which must occur if the ballot of a voter who declines to sign the affirmation is to be counted.

{¶ 50} We acknowledge that we are bound to "liberally construe election laws in favor of the right to vote." *State ex rel. Colvin*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 62. However, this rule does not allow us to simply ignore facts and make unreasonable assumptions if doing so favors the right to vote. We are mindful of the interest of those voters who cast their votes pursuant to

the law in not having the value of their votes diminished by the injudicious application of an accepted principle of law.

{¶ 51} "[I]n the absence of evidence to the contrary, public officers, administrative officers and public authorities, within the limits of the jurisdiction conferred upon them by law, will be presumed to have properly performed their duties in a regular and lawful manner and not to have acted illegally or unlawfully." *State ex rel. Speeth v. Carney* (1955), 163 Ohio St. 159, 186, 56 O.O. 194, 126 N.E.2d 449.

{¶ 52} Relying solely on the presence of incomplete affirmations, the secretary presumes that poll workers failed to take the proper actions to record the individuals' declination and transmit their names to local election officials, and that the officials failed to verify the eligibility of any names that were transmitted, even though no corroborating evidence of these alleged failures was submitted. In fact, even Mary Jo Kilroy's campaign team does not argue that these ballots are failed declinations: According to DeRose, "[a]s to these 30 provisional ballots [that contain a printed name but no signature], because you have a name and the precinct where the provisional ballot was cast, *the Board of Elections should immediately notify these voters of the defect and have them come into the Board to sign the affirmation.*" (Emphasis added.) The secretary then concludes, solely on the basis of these presumptions, that these otherwise defective affirmations were actually valid declinations, and the votes must be counted as if they were valid.

{¶ 53} If we were presented with evidence that the election officials had performed any of their statutorily required actions or evidence that they had affirmatively failed to do so because they were improperly trained or improperly instructed regarding their duties in these circumstances, we may have been persuaded that declinations could be presumed.

{¶ 54} Without such evidence, the secretary and the dissent ask too much. They ask that we apply no presumption of regularity, that we assume systematic poll-worker error so as to change an invalid affirmation to a valid one, and that we assume no other reason than poll-worker error for a voter failing to affix a signature to the ballot envelope. This interpretation allows the exception in R.C. 3505.183 for individuals who decline to execute an affirmation to swallow the rule. By presuming that any incomplete affirmation should be treated as an unnoticed declination, the secretary eliminates the statutory procedures for declinations altogether and encourages voter dilution. Such a presumption is unreasonable.

{¶ 55} We therefore grant the writ of mandamus in regard to the first category of provisional ballots.

### Ballots With Signatures But With No Printed Names

{¶ 56} For the second category of provisional ballots, those with signatures in the affirmation but no printed names, our analysis of the pertinent statutes again reveals that they present a quagmire of intricate and imprecisely stated requirements, including internal inconsistencies and multiple affirmations and declinations, some of which even the parties appear to confuse in their respective merit briefs. In view of these generally murky statutes, we hold that the secretary of state's preelection interpretation of these statutory provisions as reflected in both her assistant general counsel's March 31 e-mail response to the Franklin County Board of Elections as well as Secretary of State Directive 2008–101 was reasonable insofar as it relates to ballots with affirmations that contain signatures but no printed names. *Colvin,* 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 57 ("The secretary of state's construction is reasonably supported by the pertinent provisions, and in accordance with well-settled precedent, the court must defer to that reasonable interpretation").

{¶ 57} Having initially adopted that reasonable construction of an imprecise statutory scheme, which was evidently followed by other counties, including Madison and Union Counties, the secretary of state acted unreasonably in modifying her earlier instructions for those two categories of ballots by apparently advising only one county in the 15th Congressional District Franklin County of that modification. See *State ex rel. Myles v. Brunner,* 120 Ohio St.3d 328, 2008-Ohio-5097, 899 N.E.2d 120, ¶ 26 (court need not defer to secretary of state's unreasonable interpretation of election law). This selective modification of instructions, particularly at the request of one of the candidates for office, concerning provisional ballots was fundamentally unfair.

{¶ 58} As the United States Court of Appeals for the Sixth Circuit recently held, "[t]he right to vote includes the right to have one's vote counted on equal terms with others." *League of Women Voters of Ohio v. Brunner* (C.A.6, 2008), 548 F.3d 463, 476; *Bush v. Gore* (2000), 531 U.S. 98, 104, 121 S.Ct. 525, 148 L.Ed.2d 388 ("the right to vote as the legislature has prescribed is fundamental; and one source of its fundamental nature lies in the equal weight accorded to each vote and the equal dignity owed to each voter"). By changing her instructions for one county but not for others after the election at the request of a candidate, the secretary of state failed to ensure that the same rules would be applied to each provisional voter of every county in the state. The other counties have now certified their election results based on the secretary's original instructions, and those results cannot be modified.

{¶ 59} Therefore, based on our interpretation of the pertinent state law, we conclude that the secretary of state abused her discretion when she instructed the Franklin County Board of Elections during the counting of the votes that

these two categories of disputed provisional ballots should be counted when she previously reasonably instructed them—and other county boards of elections—that they should not be counted.

## Ballots with Names and Signatures in an Incorrect Place

{¶ 60} The final category of provisional ballots at issue, those that contain names and signatures in incorrect places on the affirmation, does not appear to have been addressed by the secretary's preelection directive. However, the assistant general counsel's March 2008 instructions were actually consistent with his and the secretary's postelection instructions that, as long as the voter's name and signature appear somewhere on the envelope, the ballot should be counted.

{¶ 61} Nevertheless, there is uncontroverted evidence here that most of the ballots in this category had signatures and names located on a completely different affirmation—the identification affirmation set forth in R.C. 3505.181(B)(6). These ballots violate R.C. 3505.182, which clearly states that "[e]ach individual who casts a provisional ballot under section 3505.181 of the Revised Code shall execute a written affirmation," the form of which must be substantially similar to the one set forth in R.C. 3505.182. This affirmation requires the individual to swear or affirm that he or she (1) is "a registered voter in the jurisdiction in which [he or she is] voting," (2) is "eligible to vote in the election," (3) understands in what circumstances his or her vote will not be counted, (4) understands that providing false information is unlawful and may result in criminal prosecution, and (5) declares that all of the sworn or affirmed statements are true and correct to the best of the individual's belief and knowledge. Id.

{¶ 62} By failing to contain either the voters' names or signatures in such an affirmation, these individuals' ballots plainly failed to comply with R.C. 3505.182. Therefore, the secretary's instructions to count those votes was unreasonable, and we accordingly grant the writ of mandamus in regard to this category of ballots.

## Conclusion

{¶ 63} Because relators have established that the secretary of state misdirected the Franklin County Board of Elections to count the disputed provisional ballots, we grant the writ of mandamus to compel the secretary of state to forthwith direct respondent Franklin County Board of Elections that in order for a provisional ballot to be eligible to be counted it must contain both the voter's name and signature in a·manner prescribed by R.C. 3505.182 and that if it does not, it is not eligible to be counted, and to further compel the secretary of state and the board of elections to forthwith reject any provisional ballots as not

eligible to be counted if they do not include the name and signature of the voter on the affirmation required by R.C. 3505.183(B)(1)(a).

Writ granted.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

PFEIFER and LANZINGER, JJ., concur in part and dissent in part.

---

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 64} I join Justice Lanzinger's opinion, but I write separately to provide an instructional note to practitioners.

{¶ 65} In order to reach the merits of this case, the majority allows relators to avoid the mandatory language of S.Ct.Prac.R. X(4)(B), which requires, in an original action other than habeas corpus, a supporting affidavit *of the relator or counsel* made on personal knowledge, specifying the details of the claim and setting forth facts admissible in evidence. Neither relators nor their counsel executed an affidavit in this matter. S.Ct.Prac.R. X(4)(B) reads:

{¶ 66} "All complaints shall contain a specific statement of facts upon which the claim for relief is based, shall be supported by an affidavit of the relator or counsel specifying the details of the claim, and may be accompanied by a memorandum in support of the writ. The affidavit required by this division shall be made on personal knowledge, setting forth facts admissible in evidence, and showing affirmatively that the affiant is competent to testify to all matters stated in the affidavit."

{¶ 67} This court's enforcement of the S.Ct.Prac.R. X(4)(B) affidavit requirement has tended toward the draconian. See *State ex rel. Evans v. Blackwell,* 111 Ohio St.3d 437, 2006-Ohio-5439, 857 N.E.2d 88; *State ex rel. Commt. for Charter Amendment for an Elected Law Director,* 115 Ohio St.3d 400, 2007-Ohio-5380, 875 N.E.2d 574; *State ex rel. Esarco v. Youngstown City Council,* 116 Ohio St.3d 131, 2007-Ohio-5699, 876 N.E.2d 953; *State ex rel. Tobin v. Hoppel,* 96 Ohio St.3d 1478, 2002-Ohio-4177, 773 N.E.2d 554. " 'We have routinely dismissed original actions, other than habeas corpus, that were not supported by an affidavit expressly stating that the facts in the complaint were based on the affiant's personal knowledge.' " *Evans,* 111 Ohio St.3d 437, 2006-Ohio-5439, 857 N.E.2d 88, at ¶ 31, quoting *State ex rel. Hackworth v. Hughes,* 97 Ohio St.3d 110, 2002-Ohio-5334, 776 N.E.2d 1050, ¶ 24. This court has shown a willingness to grant a petitioner leave to file an amended complaint complying with the affidavit requirement, e.g., *Hackworth,* 97 Ohio St.3d 110, 2002-Ohio-5334, 776 N.E.2d 1050, at ¶ 25, but relators here sought no such leave.

{¶ 68} Without so stating, our decision today acknowledges a problem with our own rule. Relaxation of the rule in this case was necessary in order to reach the merits. Although in many cases the relator or the relator's attorney indeed possesses the requisite first-hand knowledge required by S.Ct.Prac.R. X(4)(B), first-hand knowledge of the critical facts in this case could be furnished only by the board of elections, its employees, or the individual poll workers and voters involved in the casting of the disputed provisional ballots. It would be highly inappropriate for members of the board of elections, its employees, or poll workers to be relators in this litigation. And since the thrust of the litigation is the disqualification of the 1,000 or so disputed provisional ballots, the individuals attempting to cast those ballots would have no motivation to be relators. Therefore, strict adherence to the rule would always make this particular litigation subject to dismissal. It was never the purpose of the rule to make certain actions impossible.

{¶ 69} As I did in *State ex rel. Shemo v. Mayfield Hts.* (2001), 92 Ohio St.3d 324, 750 N.E.2d 167, I again warn practitioners attempting to institute original actions that until a majority of this court acknowledges the necessity of a modification of this rule, it would be wise to adhere to the letter of S.Ct.Prac.R. X(4)(B)'s affidavit requirement. As the great Professor Morgan Shipman of the Ohio State University College of Law would say, "Belt and suspenders, that's the way to play it." This case probably should be regarded as an aberration rather than a lifeline.

---

**LANZINGER, J., concurring in part and dissenting in part.**

{¶ 70} I concur in the portion of the judgment that holds that the secretary of state may not change her own reasonable interpretation of election law at the request of a candidate after the election. I agree that the writ should be granted to compel the secretary to instruct the Franklin County Board of Elections to reject those provisional ballots with signatures but without names on the affirmation, just as she had initially advised the board. I also concur that provisional ballots with names and signatures located at other than the appropriate places for affirmation also must be rejected because they do not substantially follow the form set forth for affirmations in R.C. 3505.182. I dissent from that portion of the judgment granting the writ with respect to provisional ballots that have names without signatures on the affirmation, because the secretary was not inconsistent or unreasonable in her instructions to the boards of elections regarding these ballots.

### The Secretary's Directive No. 2008–101

{¶ 71} Secretary of State Directive No. 2008–101 was issued by the secretary in October 2008 to all county boards of elections. For the first disputed category of provisional ballots, those with affirmations containing names but no signatures, the secretary's directive followed the statute in stating which provisional ballots were to be counted:

{¶ 72} "1. Ballots Eligible to be Counted

{¶ 73} "Where **ALL** of the following apply, the board staff responsible for processing provisional ballots must recommend to the board that a provisional ballot shall count, and a board of elections shall count the provisional ballot:

{¶ 74} "a) The individual named on the affirmation is properly registered to vote;

{¶ 75} "b) The individual named on the affirmation is eligible to cast a ballot in the precinct and for the election in which the individual cast the provisional ballot;

{¶ 76} "c) The individual provided the following:

{¶ 77} "(1) His or her name and signature as the person who cast the provisional ballot;

{¶ 78} "(2) A statement that he or she, as the person who cast the provisional ballot, is a registered voter in the jurisdiction in which he or she cast the provisional ballot; and

{¶ 79} "(3) A statement that he or she, as the person who cast the provisional ballot, is eligible to vote in the particular election in which he or she cast the provisional ballot;

{¶ 80} "or

{¶ 81} "(4) His or her name recorded in a written affirmation statement entered either by the individual or at the individual's direction recorded by an election official;

{¶ 82} "or    .

{¶ 83} "(5) A completed affirmation under R.C. 3505.18(B)(4) [sic] (SOS Form 10–T)." [2] (Boldface sic).

{¶ 84} Thus, this portion of the directive set forth the general rule that to count a provisional ballot, the voter must be properly registered and eligible to vote and must have provided one of three alternatives: name and signature with statements of registration and eligibility; or *name* on an affirmation statement; or a

---

2. The reference is in error and apparently should be R.C. 3505.18(A)(4), which refers to the affirmation that must be completed to show proper identification. See also R.C. 3505.181(B)(6).

completed R.C. 3505.18(A)(4) affirmation. The directive also gave advice regarding what ballots could not be counted:

{¶ 85} "2. Ballots not Eligible to be Counted

{¶ 86} "If **ANY** of the following apply, board staff responsible for processing provisional ballots shall recommend to the board that a provisional ballot **not** be counted, and a *board of elections* **shall neither open nor count** *the provisional ballot*:

{¶ 87} " * * *

{¶ 88} "c) The individual did not provide the following:

{¶ 89} "(1) His or her name and signature as the person who cast the provisional ballot;

{¶ 90} " * * *

{¶ 91} "*or*

{¶ 92} "(4) *His or her name recorded in a written affirmation statement entered either by the individual or at the individual's direction recorded by an election official.*" (Boldface sic and emphasis added.)

{¶ 93} In other words, with respect to provisional ballots where the voters' names are recorded in the written affirmation statement but there are no signatures, in both Directive 2008–101 as well as in the instructions after the election and in her decision breaking the board's tie vote, the secretary of state's position has been consistent: these votes should be counted. Consequently, I agree with the majority's holding that the secretary of state was consistent in her instructions regarding this category of provisional ballots.

{¶ 94} With regard to the second disputed category of provisional ballots that contained signatures but no printed name, I concur with the majority's conclusion that the secretary's postelection instructions were inconsistent and that the writ should be granted.

{¶ 95} For the third disputed category, provisional ballots that contain names and signatures in inappropriate places on the affirmation, I agree that although the secretary's postelection instructions were not inconsistent, the writ is appropriate because the secretary's instructions failed to apply the plain language of the pertinent statutes.

{¶ 96} For the first category of disputed provisional ballots, therefore, I now address the merits of relators' claim and would deny the writ for these provisional ballots for the following reasons.

### Affirmations With Names and Without Signatures

{¶ 97} Under R.C. 3505.181(B)(2), an individual who is eligible to cast a provisional ballot "shall be permitted to cast a provisional ballot at that polling place upon the execution of a written affirmation by the individual before an election official at the polling place stating that the individual is both of the following:

{¶ 98} "(a) A registered voter in the jurisdiction in which the individual desires to vote;

{¶ 99} "(b) Eligible to vote in that election."

{¶ 100} Relators rely on R.C. 3505.183(B), which specifies:

{¶ 101} "(1) To determine whether a provisional ballot is valid and entitled to be counted, the board shall examine its records and determine whether the individual who cast the provisional ballot is registered and eligible to vote in the applicable election. The board shall examine the information contained in the written affirmation executed by the individual who cast the provisional ballot under division (B)(2) of section 3505.181 of the Revised Code. *If the individual declines to execute such an affirmation, the individual's name, written by either the individual or the election official at the direction of the individual, shall be included in a written affirmation in order for the provisional ballot to be eligible to be counted; otherwise, the following information shall be included in the written affirmation in order for the provisional ballot to be eligible to be counted:*

{¶ 102} "*(a) The individual's name and signature;*

{¶ 103} "(b) A statement that the individual is a registered voter in the jurisdiction in which the provisional ballot is being voted;

{¶ 104} "(c) A statement that the individual is eligible to vote in the election in which the provisional ballot is being voted.

{¶ 105} " * * *

{¶ 106} "(4)(a) If, in examining a provisional ballot affirmation and additional information under divisions (B)(1) and (2) of this section, the board determines that any of the following applies, the provisional ballot envelope shall not be opened, and the ballot shall not be counted:

{¶ 107} " * * *

{¶ 108} "(iii) The individual did not provide all of the information required under division (B)(1) of this section in the affirmation that the individual executed at the time the individual cast the provisional ballot." (Emphasis added.)

{¶ 109} Relators are correct that the statutory directive concerning the voter's "name and signature" on the provisional-ballot affirmation is mandatory. R.C. 3505.183(B)(1)(a) and 3505.183(B)(4)(a)(iii). "[T]he settled rule is that election

laws are mandatory and require strict compliance and that substantial compliance is acceptable only when an election provision expressly states that it is." *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472, 476, 764 N.E.2d 971. But the requirement of a name and signature on the affirmation is invoked *only* when the voter has not "decline[d] to execute" the affirmation. R.C. 3505.183(B)(1).

### The Proof of a Declined Execution of Affirmation

{¶ 110} The term "decline" is not statutorily defined. Construed in ordinary terms, then, "decline" means "to refuse courteously or politely" or "to withhold consent." Webster's Third New International Dictionary (2002) 586; see also Black's Law Dictionary (8th Ed.2004) 439, defining a "declination" as "[a]n act of refusal."

{¶ 111} R.C. 3505.183(B)(1) merely states that a voter who declines to execute the affirmation can still have the vote counted if "either the individual or the election official at the direction of the individual" writes the individual's name on the affirmation. In this first category of disputed provisional ballots, all of them contain the voter's printed name, so this statutory condition is satisfied. See also R.C. 3505.181(B)(3) and (4), providing that a provisional ballot in which the individual declines to execute the affirmation will be counted if the election official determines that the individual is eligible to vote. Proof of the eligibility of the voter remains the principal concern.

{¶ 112} Admittedly, R.C. 3505.182, the statute that sets forth the form and requires that the form be "substantially" followed, places a duty on an election official to comply with R.C. 3505.181(B)(6) (relating to identification affirmations) if the voter declines to execute the affirmation required by R.C. 3505.182. R.C. 3505.181(B)(6), however, gives conflicting instruction on what happens if the voter declines. First, it states that "the appropriate local election official *shall record* the type of identification provided, the social security number information, the fact that the affirmation was executed, or *the fact that the individual declined to execute such an affirmation and include that information with the transmission of the ballot or voter or address information* under division (B)(3) of this section." (Emphasis added.) The second part continues, "*If the individual declines* to execute *such* an affirmation, *the* appropriate local election *official shall record the individual's name* and include that information with the transmission of the ballot under division (B)(3) of this section." (Emphasis added.) The second part does not require any notation of the declination, simply the individual's name.

{¶ 113} Furthermore, Franklin County's provisional-ballot form does not include any place for the appropriate election official to record the fact that a voter has declined to execute the affirmation, and the forms provided by R.C. 3505.182 and the secretary of state include only a space for which the election official can record that a voter declined to execute an *identification* affirmation rather than

the *eligibility* affirmation at issue here. In fact, relators in their own brief recognize that the duty imposed on the local election official to record the fact that the individual declined to execute an identification affirmation under R.C. 3505.181(B)(6) does not apply to an individual declining to execute the voter-eligibility affirmation specified in R.C. 3505.181(B)(2), 3505.182, and 3505.183(B).

{¶ 114} The voter is not required by statute to state specifically that he or she declines to sign the affirmation. Only the voter's name is needed on the affirmation for the vote to be countable. Under these circumstances, we need not, as the majority claims, "assume no error by any voter" because the voter has in fact already done all he or she is required to do under R.C. 3505.183(B)(1) by causing his or her name to be printed on the affirmation.

{¶ 115} The majority states that there are "several" acts that must occur before the vote of an individual who wishes to decline to sign the affirmation will be counted. This statement is not supported by the pertinent provisions. R.C. 3505.183(B)(1) does not require the voter to additionally communicate to the poll worker that the voter is declining to execute the affirmation, and it does not require the poll worker to ask the voter. Nor does R.C. 3505.182 or any other statute suggest that a poll worker's failure to note the fact of the declination on the provisional ballot invalidates an otherwise eligible ballot. Instead, the General Assembly expressly conditioned eligibility of the vote *solely* on the act of the voter's name being printed on the affirmation, whether by the voter directly or by the election official at the voter's direction. We cannot require something that the General Assembly has not. "We will not add a requirement that does not exist in the statute." *State ex rel. Columbia Reserve Ltd. v. Lorain Cty. Bd. of Elections*, 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 32.

{¶ 116} We recently granted a writ of mandamus to compel the secretary of state to issue a directive to boards of elections that they not reject any absentee-ballot application merely because a box next to a required qualified-elector statement was not checked. *Myles*, 120 Ohio St.3d 328, 2008-Ohio-5097, 899 N.E.2d 120. There, we held that because R.C. 3509.03 did not expressly require that the statement be located a certain distance from the applicant's signature or that the box next to the statement be marked, we could not impose that requirement. Id. at ¶ 21. Similarly, when a voter who casts a provisional ballot declines to sign the affirmation, the voter need not specify or explain the reason for choosing not to sign. The voter, or an election official at the voter's direction, simply must write the voter's name.

{¶ 117} Since there is no additional requirement for a voter to effectuate the declination, a missing signature in and of itself cannot invalidate the provisional vote of an otherwise qualified voter. Nor does the statute suggest that the failure or neglect of an election official to note the fact of a declination on a form

that provides no space or instructions for doing so mystically transforms an otherwise eligible vote into an ineligible one. Most important in this regard, the board has evidently now concluded, based on the information provided in these disputed ballots, that the electors are all eligible to vote. See R.C. 3505.183(B)(1), which provides that the board must examine all of its records, which would presumably include the poll book where the provisional voter has signed before being issued a provisional ballot.

{¶ 118} Because there is thus no legitimate way to distinguish between voters who *declined* to execute the affirmation and those voters who simply *neglected* to do so, all ballots containing names but no signatures should be counted. Otherwise, eligible voters would be disenfranchised.

## The Secretary's Reasonable Interpretation

{¶ 119} The secretary's directive to allow provisional ballots with affirmations containing names but no signatures to be counted was therefore reasonable. Allowing these ballots to be counted honors "our duty to liberally construe election laws in favor of the right to vote," our principle of deferring to the secretary of state's reasonable interpretation of election laws, and precedent requiring us to " 'avoid unduly technical interpretations that impede the public policy favoring free, competitive elections.' " *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 62 and 57; *State ex rel. Myles v. Brunner*, 120 Ohio St.3d 328, 2008-Ohio-5097, 899 N.E.2d 120, ¶ 22, quoting *State ex rel. Ruehlmann v. Luken* (1992), 65 Ohio St.3d 1, 3, 598 N.E.2d 1149.

{¶ 120} Furthermore, it would be erroneous to place the burden on the secretary of state to establish which of these provisional ballots were cast by individuals who declined to execute the affirmation when relators bear the burden of proving their entitlement to the requested extraordinary relief in mandamus. See *State ex rel. Preschool Dev., Ltd. v. Springboro*, 99 Ohio St.3d 347, 2003-Ohio-3999, 792 N.E.2d 721, ¶ 12.

{¶ 121} Nor can the policy against voter fraud alter the fact that the General Assembly has chosen to allow for provisional ballots to be counted even without any signature on an affirmation. R.C. 3505.183(B)(1). Based on the language of the pertinent statutes, I would hold that the provisional ballots containing names without signatures on the affirmation are entitled to be counted if the board determines that the individuals are otherwise eligible to vote. The secretary's instructions correctly follow the statutes and were consistent with her pre-election instructions in Directive 2008–101. Secretary of State Directive No. 2008–101 at 7–8.

{¶ 122} At best, the majority presents an alternative interpretation of a legislative scheme that the majority itself concedes is "generally murky," a

"quagmire of intricate and imprecisely stated requirements, including internal inconsistencies and multiple affirmations and declinations," and "not the model of clarity." The mere fact that the majority offers a different reading of the "confus[ing]" requirements does not render the secretary's construction of those requirements an unreasonable one. Thus, we must defer to her construction, which is also plausible. It is our " ' ' "duty to defer to the Secretary of State's interpretation of election law if it is subject to two different, but equally reasonable, interpretations." ' " *Colvin,* 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 57, quoting *State ex rel. Heffelfinger v. Brunner,* 116 Ohio St.3d 172, 2007-Ohio-5838, 876 N.E.2d 1231, ¶ 57, quoting *Whitman v. Hamilton Cty. Bd. of Elections,* 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 22.

## Legislative Concerns

{¶ 123} In holding that the secretary of state's initial directive interpreting these statutes was reasonable, the majority has sidestepped certain points. Among the issues not considered are (1) whether mistakes made on the affirmation affect the voter's eligibility under state law and the impact of mistakes attributable to poll-worker error on the voter's eligibility,[3] (2) whether R.C. 3505.183(B)(1) requires a *printed* name in addition to the provisional voter's signature on the affirmation even though the General Assembly does not require a printed name,[4] and (3) whether granting the writ in this case violates the constitutional rights to vote and equal protection, the Voting Rights Act, or the Help America Vote Act. These issues were raised and briefed by the parties, but remain untouched by the majority. Instead, the case is disposed of on grounds that the secretary's actions were "fundamentally unfair." The remaining issues will lurk until the next election unless certain language is clarified.

{¶ 124} The General Assembly's statutory procedure for the casting, processing, and counting of provisional ballots in Ohio is far from lucid. At best, R.C. 3505.181, 3505.182, and 3505.183 ambiguously set forth the requirements for election officials to determine whether a provisional vote is to be counted as a valid ballot. The secretary of state's change in position in this case concerning at least one category of disputed provisional ballots is but one example of the statutes being read in differing yet defensible ways. As a result, the General Assembly should re-examine R.C. 3505.181, 3505.182, and 3505.183 to determine whether they accurately express its legislative intent in light of the fundamental

---

3. R.C. 3505.182 sets forth a form that requires the poll worker to sign a statement that the voter's affirmation was signed and affirmed before the official.

4. Compare R.C. 4505.07(F)(6), which requires a "space for the signature of the transferor and the transferor's *printed name* and address in full" on the reverse side of a motor vehicle certificate of title. (Emphasis added.)

constitutional importance of the right to vote and to have that vote counted. See Section 1, Article V, Ohio Constitution, which states, "Every citizen of the United States, of the age of eighteen years, who has been a resident of the state, county, township, or ward, such time as may be provided by law, and has been registered to vote for thirty days, has the qualifications of an elector, and is entitled to vote at all elections."

## Conclusion

{¶ 125} In summary, I concur in the portion of the judgment and opinion insofar as it relates to the second category of disputed provisional ballots, those with signatures but without names on the affirmation, because the secretary altered her instructions to Franklin County for counting these ballots while her previous instructions to other counties remained unchanged. I concur in judgment with respect to the granting of the writ on the third category of disputed provisional ballots, those with names and signatures located at other than the appropriate places for affirmation, because although the secretary did not provide inconsistent instructions on these ballots, the applicable statutes require that they not be counted.

{¶ 126} Finally, because the secretary of state consistently and correctly instructed the board of elections to count the disputed ballots containing names without signatures on the affirmation, provided that the voter was properly registered and was otherwise an eligible voter, and because relators have not met their burden of establishing their entitlement to it, I would deny the writ with respect to this category of ballots. Because the majority does not do so and consequently disenfranchises those electors who are constitutionally and statutorily eligible to have their votes counted, I respectfully dissent from that portion of the opinion.

PFEIFER, J., concurs in the foregoing opinion.

---

Zeiger, Tigges & Little, L.L.P., John W. Zeiger, Marion H. Little Jr., and Christopher J. Hogan, for relators.

Nancy Hardin Rogers, Attorney General, and Richard N. Coglianese, Damian W. Sikora, Aaron Epstein, Pearl M. Chin, and Michael J. Shuler, Assistant Attorneys General, for respondent Secretary of State Jennifer L. Brunner.

Ron O'Brien, Franklin County Prosecuting Attorney, and Patrick J. Piccininni and Anthony E. Palmer Jr., Assistant Prosecuting Attorneys, for respondent Franklin County Board of Elections.

McTigue Law Group, Donald J. McTigue, and Mark A. McGinnis, for intervening respondent Ohio Democratic Party.

Carrie L. Davis and Jeffrey M. Gamso, urging denial of the writ for amicus curiae ACLU of Ohio.

Meredith Bell–Platts and Neil Bradley, urging denial of the writ for amicus curiae ACLU Voting Rights Project.

