Pfeifer, J.,
dissenting.
{¶ 49} There will always be tension between political power and the constraints of the Ohio Constitution when a new map for the boundaries of legislative districts is drawn. Ohio voters Charles Wilson and others have put the question of constitutionality in play by bringing this action. Article XI, Section 13 of the Ohio Constitution places on this court the duty to answer that question without deference to either party. There is no basis in the Ohio Constitution, in fairness, in justice, or in political reality for this court to cloak the apportionment board’s actions with a presumption of constitutionality that can be overcome only by proof beyond a reasonable doubt. In doing so, the majority opinion is just plain wrong. It relegates this court to the status of a pawn in a high-stakes political chess match.
{¶ 50} The drafters of Article XI fully understood that they were placing the difficult duty of map drawing in the hands of the state’s top partisan office holders, knowing that they would draw the districts to their partisan advantage, limited only by federal law and the Ohio Constitution. Likewise, they understood that when the board’s work was done, questions of constitutional compliance could arise and, if they did, they should be answered directly by this court. A *236 process for the board to correct any constitutional violations found by this court or the United States Supreme Court is also detailed in Article XI, Section 13.
{¶ 51} As we review the adopted maps, the evidence of the process that resulted in the maps, and alternative map choices, it must be with an effort to be strictly neutral in assessing the finished product of the adopted apportionment plan while keeping in mind a fair and normal reading of the constraints found in Article XI of our Constitution.
{¶ 52} Article XI of the Ohio Constitution is well organized and comprehensive in setting out the rules and process for apportionment. The makeup of the apportionment board is set out in Section 1. Determination of the population parameters for each legislative district is to be achieved by following a precise succession of chronological steps found in Sections 2, 3, 4, and 5. Section 6 establishes that the apportionment plan is to be revised after the completion of each federal decennial census.
{¶ 53} Section 7 controls the process to be followed by the apportionment board in mapping the boundary lines of House of Representative districts. The steps are defined in four paragraphs that make sense when read in normal progression, top to bottom. Sections 8 and 9 address issues not being contested in this litigation. Section 10 provides instruction for numbering House of Representative districts when the mapping process is completed.
{¶ 54} The question before us is this: Does the apportionment plan adopted by the board comply with the mandates of the Ohio Constitution? Our determination should not be influenced by evidence that persons who were tasked with drawing the boundaries sent self-promoting e-mails proclaiming success in drawing legislative boundaries that favor the political party controlling the board. That such an effort was undertaken should be presumed and is no more shocking than gambling in Rick’s Cafe. Nor is it our function to choose an alternative apportionment plan. Alternative plans are useful, however, in assessing whether the adopted plan was designed to achieve compactness and minimization of splits of governmental units, as required by Article XI, Section 7 of the Ohio Constitution.
{¶ 55} Having reviewed the adopted plan and compared it with the submitted evidence, I reluctantly conclude that the constitutional challenge has merit. The board should be directed to reconvene pursuant to Section 13 for the purpose of adopting a revised plan that more nearly optimizes the mandates of Section 7 with respect to compactness and minimization of splits of governmental units. In her dissent, Justice McGee Brown has well documented many of the splits that should have been avoided. In total, 39 counties (out of 88) have been split 74 times. The lack of compactness of the current map is self-evident.
*237 {¶ 56} The majority, having reviewed the same evidence, concludes that the plan is constitutional. I agree with the majority opinion’s implicit rejection of the board’s principal argument supporting constitutionality: that Section 10, which relates to numbering of districts, somehow can be used to guide mapping. In order to justify its finding of constitutionality, the majority opinion expresses two conclusions of questionable legitimacy; these anchors of the majority opinion fail the tests of logic and fairness. First the majority opinion erects a nearly insurmountable barrier to a successful constitutional challenge by assigning to the board’s actions a blanket presumption of constitutionality and requiring proof beyond a reasonable doubt to establish that the plan fails to meet all constitutional requirements. Majority opinion, paragraph two of the syllabus.
{¶ 57} The two cites given by the majority opinion as authority for that standard stand for the proposition that public officials are presumed to have acted lawfully, not that the constitutionality of their work product can be overcome only by proof beyond a reasonable doubt. See State ex rel. Skaggs v. Brunner, 120 Ohio St.3d 506, 2008-Ohio-6333, 900 N.E.2d 982, ¶ 51, and State ex rel. Speeth v. Carney, 163 Ohio St. 159, 186, 126 N.E.2d 449 (1955). Proof beyond a reasonable doubt is typically necessary only in criminal cases. Such a high burden of proof in the current constitutional matter turns this court into a rubber stamp, not the guardian of the constitution that it is designed to be.
{¶ 58} Next, the majority adopts the board’s secondary argument, concluding that Section 7(D) can subsume and override the express directives of Sections 7(A), 7(B), and 7(C) regarding the compactness of districts and the requirement to minimize splits. Section 7(D), properly interpreted, directs the board to follow the district lines of the prior apportionment where possible. But unless Section 7(D) is subservient to the paragraphs above it, a board could justify the adoption of an incumbent-protecting apportionment plan and forgo any effort to achieve compactness and minimize splits of governmental units. The majority’s interpretation is illogical. Its reading of Section 7 undermines the long-accepted constitutional foundation of Ohio’s apportionment process: legislative districts should be compact and respectful of the boundaries of governmental units.
{¶ 59} The majority opinion’s conclusion could lead to an absurd result. Based on the majority opinion, provisions of a prior plan that are patently unconstitutional would be protected, possibly forever, by the dominion granted to Section 7(D) over the critically important Sections 7(A), 7(B), and 7(C).
{¶ 60} Remapping by the apportionment board would certainly bring no pleasure to the members of the General Assembly in either political party. All incoming House members and half of the incoming Senate members recently won elections in the newly drawn districts. Because of this plan’s serial violations of *238 the Section 7 constitutional mandate for compactness of legislative districts and minimization of governmental-unit splits, however, remapping is required.
{¶ 61} I dissent.
O’Connor, C.J., concurs in the foregoing opinion.