THE STATE OF OHIO EX REL. MYLES ET AL. *v.* BRUNNER, SECY. OF STATE.

[Cite as *State ex rel. Myles v. Brunner,* 120
Ohio St.3d 328, 2008-Ohio-5097.]

(No. 2008–1842—Submitted October 1, 2008—Decided October 2, 2008.)

**Per Curiam.**

{¶ 1} This is an expedited election action for a writ of mandamus to compel the secretary of state to issue a directive to county boards of elections that they may not reject an absentee-ballot application based on the applicant's failure to mark a box. Because the secretary of state erroneously instructed boards of elections that certain absentee-ballot applications must be rejected when applicants do not mark a box next to a qualified-elector statement, we grant the writ.

### McCain–Palin Absentee–Ballot Applications

{¶ 2} McCain–Palin 2008, Inc., distributed absentee-ballot applications to qualified electors in Ohio that were in the following form:

## VOTE-BY-MAIL REQUEST CARD

☐ **I am a qualified elector and would like to receive an Absentee Ballot for the November 4, 2008 General Election.**

| | **Address to mail ballot:** (if different from voter registration address): |
|---|---|
| NAME | |
| VOTER REGISTRATION ADDRESS | VOTER MAILING ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |

Date of birth: _____

Signature: _____

One of the following:

☐ Ohio driver's license number _____

☐ Last four digits of Social Security number _____

☐ A copy of your current and valid photo photo identification, military identification, current utility bill, bank statement, government check, paycheck, or other government document that shows your name and current address. (Note: You cannot use as proof of identification a notice that the board of elections mailed to you.)

{¶ 3} Relators, William Myles and Betty R. Smith, are residents of Hamilton County, Ohio, and are registered voters and qualified electors. Relators received the McCain absentee-ballot applications and submitted them without checking the box to the left of the statement "I am a qualified elector and would like to receive an Absentee Ballot for the November 4, 2008 General Election."

### Secretary of State's Memorandum

{¶ 4} On September 5, 2008, respondent, Secretary of State Jennifer Brunner, issued a memorandum to counties and boards of elections after she received questions from many boards regarding the sufficiency of absentee-ballot applications with an unmarked check box next to an applicant's statement that the person is a qualified elector. In the memorandum, the secretary of state instructed the boards of elections to reject absentee-ballot applications like the McCain applications that have an unmarked check box next to the applicant's statement that the person is a qualified elector:

{¶ 5} "If your board of election receives an absentee ballot application with a check box related directly to a required statement, and the statement is not directly related to a signature line such as appears on the Secretary of State prescribed voter registration Form 11–A, the check box must be marked in some manner by the applicant in order to affirm the required statement. *If the box is not checked, the applicant has not affirmatively made the statement required under R.C. 3509.03, and the application must be rejected unless the applicant has affirmed the statement in some other way.*" (Emphasis added.)

### Impact of Secretary of State's Memorandum

{¶ 6} Relator Smith's application for an absentee ballot was rejected because she did not mark the box on the McCain application form next to the statement that she is a qualified elector. Relator Myles believes that his application on the McCain form might be rejected for the same reason. Over 3,500 absentee-ballot applications have been rejected by certain boards of elections because of the applicants' failure to check the box next to their qualified-elector statements.

### Expedited Election Case

{¶ 7} Relators subsequently filed this expedited election action for a writ of mandamus to compel the secretary of state to (1) "issue a Directive to the County Boards of Election[s] that they may not reject an absentee ballot application on the basis of a box not being marked" and (2) "issue a clarifying memorandum to the County Board[s] of Elections reiterating that the County Board[s] of Elections must issue an absentee ballot to any qualified elector who submits an application that contains all of information required by R.C. 3509.03." The parties submitted evidence and briefs pursuant to the accelerated schedule set forth in S.Ct.Prac.R. X(9).

{¶ 8} This cause is now before the court for its determination on the merits.

### Jurisdiction and Other Matters

{¶ 9} We reject the secretary's contention that we lack subject-matter jurisdiction over relators' mandamus claim based on our holding in *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 20, quoting *State ex rel. Melvin v. Sweeney* (1950), 154 Ohio St. 223, 226, 43 O.O. 36, 94 N.E.2d 785 ("As relators observe, we have expressly recognized that if the secretary of state 'has, under the law, misdirected the members of boards of elections as to their duties, the matter may be corrected through the remedy of mandamus' "). We similarly reject the secretary's arguments that mandamus will not remedy an abuse of her discretion in this regard and that relators have an adequate remedy at law that would preclude mandamus.[1]

---

1. We also deny the secretary's request that the court strike or disregard the affidavit testimony of one of relators' attorneys because under the Rules of Professional Conduct, he cannot testify on his clients' behalf except under certain specified circumstances. Any potential ethical problem does not render the testimony by affidavit incompetent. See *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 258, 31 OBR 459, 510 N.E.2d 379 ("while it is much better practice for an attorney not to testify on behalf of his client, testimony by an attorney is competent evidence, if otherwise admissible").

## Mandamus

{¶ 10} "To be entitled to the requested writ, relators must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of the secretary of state to provide it, and the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Heffelfinger v. Brunner,* 116 Ohio St.3d 172, 2007-Ohio-5838, 876 N.E.2d 1231, ¶ 13.

## General Duties of the Secretary of State

{¶ 11} As the state's chief election officer pursuant to R.C. 3501.04, the secretary of state has many election-related duties, including the duties to "[i]ssue instructions by directives and advisories to members of the boards as to the proper methods of conducting elections," "[p]repare rules and instructions for the conduct of elections," "[p]rescribe the form of registration cards, blanks, and records," and "[c]ompel the observance by election officers in the several counties of the requirements of the election laws." R.C. 3501.05(B), (C), (F), and (M).

{¶ 12} Relators contend that the secretary of state has a duty enforceable in mandamus under these provisions to issue a directive or a new memorandum correcting her previous memorandum by instructing boards of elections to accept the McCain applications even if the applicant has not checked the box next to the qualified-elector statement.

## R.C. 3509.03

{¶ 13} Relators assert that they are entitled to the requested extraordinary relief in mandamus because the secretary of state, through her memorandum, misdirected the boards of elections as to their duties regarding the McCain absentee-ballot applications. They claim that they fully complied with the requirements of R.C. 3509.03, which provides:

{¶ 14} "[A]ny qualified elector desiring to vote absent voter's ballots at an election shall make written application for those ballots to the director of elections of the county in which the elector's voting residence is located. *The application need not be in any particular form but shall contain all of the following*:

{¶ 15} " * * *

{¶ 16} "*(G) A statement that the person requesting the ballots is a qualified elector.*" (Emphasis added.)

{¶ 17} In construing R.C. 3509.03, "our paramount concern is the legislative intent in enacting the statute." *State ex rel. Steele v. Morrissey,* 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. "To discern this intent, we first consider the statutory language, reading words and phrases in context and construing them in accordance with the rules of grammar and common usage."

*State ex rel. Choices for South–Western City Schools v. Anthony,* 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 40.

{¶ 18} R.C. 3509.03 specifies that although an absentee-ballot application need not be in any particular form, it "shall contain" certain items, including a "statement that the person requesting the ballots is a qualified elector." R.C. 3509.03(G). "[T]he settled rule is that election laws are mandatory and require strict compliance and that substantial compliance is acceptable only when an election provision expressly states that it is." *State ex rel. Ditmars v. McSwee-ney* (2002), 94 Ohio St.3d 472, 476, 764 N.E.2d 971. R.C. 3509.03 demands strict compliance insofar as absentee-ballot applications must contain the specified information.

{¶ 19} It is unquestioned here that the challenged McCain absentee-ballot applications contain all the information required by R.C. 3509.03, including the qualified-elector statement specified by R.C. 3509.03(G).

{¶ 20} In her memorandum, however, the secretary of state advised that these applications were defective and must be rejected because there was no affirmation that the applicant was making the preprinted qualified-elector statement when the box next to the statement was not marked and the statement was not located near the applicant's signature.

{¶ 21} R.C. 3509.03 does not expressly require that the statement be located a certain distance from the applicant's signature. Because the statute also does not strictly require that the box next to the qualified-elector statement be marked, we cannot require it. *State ex rel. Columbia Reserve Ltd. v. Lorain Cty. Bd. of Elections,* 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 32 ("We will not add a requirement that does not exist in the statute").

{¶ 22} Moreover, we "must avoid unduly technical interpretations that impede the public policy favoring free, competitive elections." *State ex rel. Ruehlmann v. Luken* (1992), 65 Ohio St.3d 1, 3, 598 N.E.2d 1149; cf. *Stern v. Cuyahoga Cty. Bd. of Elections* (1968), 14 Ohio St.2d 175, 180, 43 O.O.2d 286, 237 N.E.2d 313 ("Absolute compliance with every technicality should not be required in order to constitute substantial compliance, unless such complete and absolute conformance to each technical requirement of the printed form serves a public interest and a public purpose").

{¶ 23} No vital public purpose or public interest is served by rejecting electors' applications for absentee ballots because of an unmarked check box next to a qualified-elector statement. There is also no evidence of fraud. As relators persuasively assert, the "only reason to complete the form was to obtain an absentee ballot for the November 4, 2008 election," and signing it necessarily indicated that the applicant represented, "I am a qualified elector and would like to receive an Absentee Ballot for the November 4, 2008 General Election,"

regardless of whether the box next to the statement was marked. See also *Eubanks v. Hale* (Ala.1999), 752 So.2d 1113, 1128, where the Supreme Court of Alabama reached a similar conclusion regarding absentee ballots cast without checking the box next to a preprinted statement.

{¶ 24} By contrast, the secretary's reliance on *State ex rel. Stevens v. Geauga Cty. Bd. of Elections* (2000), 90 Ohio St.3d 223, 736 N.E.2d 882, to support her imposition of an affirmation requirement in R.C. 3509.03 is misplaced. In *Stevens,* we denied a writ of mandamus to compel a board of elections to certify a local-option question concerning Sunday sales of alcohol on an election ballot because the petition did not include an "X" in the box to the left of that question on a preprinted form and included only an "X" in the box next to a separate local-option question. In that case, and pursuant to statute, the "form and accompanying instructions prepared by the Secretary of State and used by [the petitioner] in preparing, circulating, and filing the petition expressly required that the petitioner place an 'X' in the box to the left of the question or questions sought to be submitted to the electorate." Id. at 227, 736 N.E.2d 882.

{¶ 25} There is no such requirement in R.C. 3509.03. *Stevens* is thus inapposite.

{¶ 26} Therefore, we need not defer to the secretary of state's interpretation because it is unreasonable and fails to apply the plain language of R.C. 3509.03. *State ex rel. Brinda v. Lorain Cty. Bd. of Elections,* 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, ¶ 30. Adopting the secretary of state's interpretation of R.C. 3509.03 would result " 'not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted * * * may be included within its scope.' " (Bracketed material sic.) *Lamie v. United States Trustee* (2004), 540 U.S. 526, 528, 124 S.Ct. 1023, 157 L.Ed.2d 1024, quoting *Iselin v. United States* (1926), 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566. This result is also consistent with "our duty to liberally construe election laws in favor of the right to vote." *Colvin,* 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 62.[2]

## Conclusion

{¶ 27} Based on the foregoing, and consistent with our recent holding in *Colvin,* 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, we conclude that relators have established their entitlement to the requested extraordinary relief.

---

2. Relators further claim that they are entitled to the requested writ of mandamus because the secretary's instructions violated the Voting Rights Act and the Equal Protection Clause. Our holding renders these claims moot. See *State ex rel. Barletta v. Fersch,* 99 Ohio St.3d 295, 2003-Ohio-3629, 791 N.E.2d 452, ¶ 22 ("we will not issue advisory opinions, and this rule applies equally to election cases"); *State ex rel. DeBrosse v. Cool* (1999), 87 Ohio St.3d 1, 7, 716 N.E.2d 1114 ("Courts decide constitutional issues only when absolutely necessary").

Therefore, we grant a writ of mandamus to compel the secretary of state to issue a directive forthwith to the boards of elections that they may not reject any absentee-ballot application because of an unmarked box next to a qualified-elector statement.

Writ granted.

MOYER, C.J., and PFEIFER, WOLFF, SLABY, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

WILLIAM H. WOLFF JR., J., of the Second Appellate District, sitting for LUNDBERG STRATTON, J.

LYNN C. SLABY, J., of the Ninth Appellate District, sitting for O'CONNOR, J.

---

Keating, Muething & Klekamp P.L.L., James E. Burke, and Charles M. Miller, for relators.

Nancy Hardin Rogers, Attorney General, and Richard N. Coglianese, Damian W. Sikora, Pearl M. Chin, and Michael J. Schuler, Assistant Attorneys General, for respondent.