[Cite as *State ex rel. Meigs Cty. Home Rule Commt. v. Meigs Co. Bd. of Commrs.*, 2015-Ohio-3701.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

State of Ohio, ex rel.                          :
Meigs County Home Rule Committee,    :
by its members, Paul K. Strauss,         :
et al.,                                                 :
                                                           :
          Relators,                               :          Case No. 15CA9
                                                           :
     v.                                                  :
                                                           :
County of Meigs                                :          DECISION AND JUDGMENT ENTRY
Board of Commissioners,                   :
Michael Bartrum, et al.,                      :
                                                           :          **RELEASED: 9/9/2015**
          Respondents.                         :
_____
APPEARANCES:

James Kinsman, Cincinnati, Ohio and Terry J. Lodge, Toledo, Ohio, for Relators.

Colleen Williams, Meigs County Prosecuting Attorney and Jeremy Fisher, Meigs County Assistant Prosecuting Attorney, Pomeroy, Ohio for Respondents.
_____

HARSHA, J:

{¶1}    The Relator Meigs County Home Rule Committee filed a petition for writ of mandamus seeking to compel the Meigs County Board of Commissioners to certify a petition for an adoption of a county charter to the Meigs County Board of Elections pursuant to R.C. 307.94. The Committee alleges that it complied with R.C. 307.94, which governs the procedures for submitting the question of the adoption of a county charter to the electors of the county at the next general election. According to the petition, the Committee filed the petition with the Meigs County Board of Election and the Board of Elections determined that the petition and the signatures on the petition met the requirements of law.  The Committee alleges that the Board of Elections

properly certified the petition to the Board of Commissioners, but that the Board of Commissioners failed to comply with its legal obligation to certify the petition to the Board of Elections for submission to the electors of the county as required in the second paragraph of R.C. 307.94.  The Committee seeks a writ of mandamus to compel the Meigs County Board of Commissioners to certify the petition to the Meigs County Board of Elections.

{¶2}    The Committee filed a motion for summary judgment in support of their petition and sought expedited relief. The Board of Commissioners filed an answer, a response to the Committee's motion, and its own motion for summary judgment.  The Commissioners argue that because the Board of Elections did not certify whether the petition was valid and there were sufficient valid signatures not later than 120 days before general election, the Commissioners had no statutory duty to certify the petition to the Board of Elections.

{¶3}    The Commissioners also filed a supplemental response in which it argued that the Committee's petition is invalid because the Ohio Secretary of State has recently reviewed the substantive content of the proposed county charters attached to similar petitions in three other counties and determined that the petitions in those counties are invalid.  Alternatively, the Commissioners ask us to stay the action pending any appeal from the Ohio Secretary of State's determination.

{¶4}    R.C. 307.94 requires the Board of Elections to make two separate and distinct determinations and certify these findings to the Board of Commissioners not later than 120 days before the day of the general election: (1) whether the petition is

valid or invalid and (2) whether there are sufficient valid signatures. Here, we find that the Board of Elections timely certified that there were sufficient valid signatures in accordance with R.C. 307.94, but failed to certify whether the petition itself was valid until after the 120-day deadline. The Board of Commissioners has no clear legal duty to certify the petition to the Board of Elections until it receives a timely certification *both* that the petition is valid and that there are sufficient valid signatures. Therefore, the Commissioners have no clear legal duty to certify the petition, by resolution, to the Board of Elections and the Committee is not entitled to the extraordinary judicial remedy of mandamus.

{¶5}    Moreover, our determination of this mandamus action does not require that we examine the petition or the substantive content of the attached charter. We are not making any determination concerning the validity or invalidity of either the petition or the signatures on the petition, nor are we making any determination as to the constitutionality or legality of the contents of the proposed county charter. Rather, to determine whether the Committee is entitled to a writ of mandamus, we review only the procedural requirements of R.C. 307.94 to determine if the Meigs County Board of Commissioner's non-discretionary duty to "forthwith. . . by resolution, certify the petition to the board of elections for submission to the electors" was triggered by the Board of Election.

{¶6}    Thus, we **DENY** the Committee's motion for summary judgment, **GRANT** the Commissioners' motion for summary judgment, **DENY** the Commissioners' motion for stay, **DENY** the writ, and **DISMISS** the petition for a writ of mandamus.

## Civ. R. 56 Requirements

{¶7}    Summary judgment motions are governed by the standards of Civ.R. 56. Summary judgment is appropriate if the party moving for summary judgment establishes that (1) there is no genuine issue of material fact, (2) reasonable minds can come to but one conclusion, which is adverse to the party against whom the motion is made and (3) the moving party is entitled to judgment as a matter of law.  Civ.R. 56; *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶ 24; *Chase Home Finance, LLC v. Dunlap*, 4th Dist. Ross No. 13CA3409, 2014-Ohio-3484, ¶ 26.

{¶8}    The moving party has the initial burden of informing the trial court of the basis for the motion by pointing to summary judgment evidence and identifying the parts of the record that demonstrate the absence of a genuine issue of material fact on the pertinent claims.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); *Chase Home Finance* at ¶ 27.  Once the moving party meets this initial burden, the non-moving party has the reciprocal burden under Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue remaining for trial.  *Dresher* at 293.

{¶9}    Mandamus actions are governed by Ohio Revised Code Chapter 2731. A mandamus is a writ to enforce performance of a specific act by a public official or agency and will only be issued where there is a clear legal duty to act. A writ of mandamus will not be issued when there is a plain and adequate remedy in the ordinary course of law. See R.C. 2731.05.  In order for the court to grant a writ of mandamus, the relator must show that: (1) the relator has a clear legal right to the relief prayed for; (2)

respondent is under a clear legal duty to perform the acts; and (3) relator has no plain and adequate remedy in the ordinary course of law. *State ex rel. Taxpayers for Westerville Schools v. Franklin Cty. Bd. of Elections,* 133 Ohio St.3d 153, 2012-Ohio-4267, 976 N.E.2d 890, ¶ 12; *State ex rel. Lewis v. Bd. of Cty. Commrs. of Jackson Cty.,* 4th Dist. Jackson App. No. 98CA830, 2002-Ohio-1424; *Conley v. Corr. Reception Ctr.,* 141 Ohio App.3d 412, 415, 2001-Ohio-2365, 751 N.E.2d 528, 530 (4th Dist. 2001). The relator must prove these requirements by clear and convincing evidence. *See State ex rel. Waters v. Spaeth,* 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 13, quoting *State ex rel. Doner v. Zody,* 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, paragraph three of the syllabus (" 'Relators in mandamus cases must prove their entitlement to the writ by clear and convincing evidence' "). Because of the proximity of the November 3, 2015 election, the Committee has established that it lacks an adequate remedy in the ordinary course of the law. *Taxpayers for Westerville Schools* at ¶ 12; *State ex rel. Orange Twp. Bd. of Trustees v. Delaware Cty. Bd. of Elections*, 135 Ohio St.3d 162, 164, 2013-Ohio-36, 985 N.E.2d 441, 444, ¶ 14 (2013).

{¶10} The Commissioners argue that the mandamus petition is barred because the Committee failed to exhaust its legal remedies when it failed to file suit in the Meigs County Common Pleas Court in accordance with the procedure provided in R.C. 307.94. However, that procedure governs committee protests where a board of elections has found the petition to be invalid or to have insufficient valid signatures:

> If the petition is certified by the board of elections to be *invalid or to have insufficient valid signatures*, or both, the petitioners' committee may protest such findings or solicit additional signatures as provided in section 307.95 of the Revised Code, or both, or request that the board of elections

proceed to establish the validity or invalidity of the petition and the
sufficiency or insufficiency of the signatures in an action before the court
of common pleas in the county.

(Emphasis added) R.C. 307.94. Because the Board of Elections did not address the

petition's validity or invalidity, there was no express finding of invalidity here and the

protest procedure available to the Committee is not applicable. Thus, we find no

requirement that the Committee ask the Meigs County Board of Election file an action in

the Meigs County Court of Common Pleas prior to filing this mandamus petition.

<u>Legal Analysis</u>

**{¶11}** The dispute between the Committee and the Commissioners involves

whether the Commissioners have a clear legal duty to certify the petition to the Board of

Elections under R.C. 307.94, the statutory provision which governs the adoption of a

county charter. The right of the people of any county to adopt a charter is provided for in

the Ohio Constitution, Article X, Section 3. The procedure for placing a county charter

question before the electors is governed by R.C. 307.94.  Under this section, electors of

a county may file a petition asking that the question of the adoption of a county charter

be submitted to the electors of the county.  The petitioners are required to designate in

the petition a committee of three to five persons who will represent them in matters

relating to the petition.  The Relator, Meigs County Home Rule Committee, is the

designated committee and consists of the following five members: Paul K. Strauss,

Gregory D. Howard, Dennis Jay Sargent, Kathy Lynn Sargent, and Marsha Nagy

Whitton.

**{¶12}** Electors of a county have two alternative procedures to place a county

charter question before the voters. They can file a petition with the board of county

commissioners or they can file a petition with the board of elections of the county.  The

Meigs County Home Rule Committee filed the petition with the Meigs County Board of

Elections rather than with the Meigs County Board of Commissioners.  Thus, the

relevant portion of R.C. 307.94 governing this dispute is set forth in the second

paragraph:

> Such electors may, in the alternative not later than the one hundred
> thirtieth day before the date of a general election, file such a petition with
> the board of elections of the county. In such case the board of elections
> shall immediately proceed to determine whether the petition and the
> signatures on the petition meet the requirements of law and to count the
> number of valid signatures and to note opposite each invalid signature the
> reason for the invalidity. The board of elections shall complete its
> examination of the petition and the signatures and shall submit a report to
> the board of county commissioners not later than the one hundred
> twentieth day before the date of the general election certifying whether the
> petition is valid or invalid and, if invalid, the reasons for invalidity, whether
> there are sufficient valid signatures, and the number of valid and invalid
> signatures. The petition and a copy of the report to the board of county
> commissioners shall be available for public inspection at the board of
> elections. If the petition is certified by the board of elections to be valid and
> to have sufficient valid signatures, the board of county commissioners
> shall forthwith and not later than four p.m. on the one hundred eleventh
> day before the general election, by resolution, certify the petition to the
> board of elections for submission to the electors of the county at the next
> general election.
>         *               *               *

R.C. 307.94

**{¶13}**  The next general election is Tuesday, November 3, 2015. The petition

must be submitted to the Board of Elections by the 130th day before November 3, which

was Friday, June 26, 2015.  The Board of Elections must complete its examination of

the petition and the signatures and submit a report to the Board of Commissioners

certifying whether the petition is valid and whether there are sufficient valid signatures

by the 120th day, which was Monday, July 6. If the petition is certified to be valid and to have sufficient valid signatures, the Board of Commissioners shall, by resolution, certify the petition to the Board of Elections for submissions to the electors by 4 p.m. on the 111th day, which was 4 p.m. Wednesday, July 15, 2015.

{¶14} A board of elections examination of the petition is governed by R.C. 307.95, which specifically incorporates R.C. 3501.38. Those provisions require the board of elections to examine the petition to determine if the petition meets the requirements of R.C. 307.95 and R.C. 3501.38 and to examine the signatures on the petition to determine if there are a sufficient number of valid signatures. If the board finds invalid signatures, it is to note opposite the signature the reason for the invalidity. R.C. 307.95. Under R.C. 3501.38, the board of elections also examines the petition to ensure compliance with provisions (A) through (L) of R.C. 3501.38. For example, subsection (E) requires that the person circulating the petition sign a statement under penalty of election falsification that the circulator witnessed the affixing of every signature. Subsection (I)(1) requires the board of elections to ensure that no alternations, corrections, or additions are made to the petition after it is filed. Subsection (J) requires the petitions to be accompanied by a statement in boldface capital letters, "WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELOY IN THE FIFTH DEGREE." A certification by the board of elections that the petition is valid means that the board of elections has checked the form of the petition against the requirements in R.C. 3501.38 and R.C 307.95 and determined that it complies.

{¶15} The board of elections power to review, examine and certify the

sufficiency and validity of petitions is provided under R.C. 3501.11(K):

> Each board of elections shall exercise by a majority vote all powers granted to the board by Title XXXV of the Revised Code, shall perform all duties imposed by law, and shall do all of the following:
>
>           *                          *                        *
>
> (K) Review, examine, and certify the sufficiency and validity of petitions and nomination papers * * *.

The board of elections is authorized to appoint a director and deputy director under R.C. 3501.11(D) and R.C. 3501.09 and is authorized to assign duties to the director and deputy director in connection with the office under R.C. 3501.13 and R.C. 3501.14.

{¶16} When the board of elections "certifies" a petition, it means that the board confirms that the petition meets the standards or criteria of R.C. 307.95 and R.C. 3501.38:

> "Certify" means "to confirm or attest often by a document under hand or seal as being true, meeting a standard, or being as represented." Webster's Third New International Dictionary (1986) 367; see also Garner, Black's Law Dictionary (8th Ed.2004) 241, defining "certify" as "[t]o attest as being true or as meeting certain criteria."

*State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 117 Ohio St.3d 76, 83-84, 2008-Ohio-333, 881 N.E.2d 1214, 1223, ¶ 43. The Supreme Court of Ohio, in construing a statute defining the term "certified copy" as used in city ordinance petitions, has held that a written statement attesting that something is true must be signed:

> " 'Attest' means 'to certify to the verity of a copy of a public document *formally by signature*' and an attested copy of a document is 'one which has been examined and compared with the original, with a certificate or memorandum of its correctness, *signed by the persons who have examined it.*' " (Emphasis added.) *State ex rel. Crossman Communities of Ohio, Inc. v. Greene Cty. Bd. of Elections* (1999), 87 Ohio St.3d 132, 137, 717 N.E.2d 1091, overruled in part on other grounds, *State ex rel. Commt. for the Referendum of Ordinance No. 3844–02 v. Norris,* 99 Ohio St.3d

336, 2003-Ohio-3887, 792 N.E.2d 186, ¶ 36–41, quoting Black's Law Dictionary (6th Ed.1990) 127–128.

These definitions are consistent with common usage. See Garner, Black's Law Dictionary (8th Ed.2004) 138, defining "attest" as "[t]o affirm to be true or genuine; to authenticate by *signing* as a witness." Moreover, "attestation clause" is defined as "[a] provision at an end of the instrument (esp. a will) that is *signed* by the instrument's witnesses"; see, also, Webster's Third New International Dictionary (1986) 141, defining "attest" as "to witness and authenticate by *signing* as a witness." (Emphasis added.)

Relators assert that other dictionary definitions of "attest" do not require a signature. They rely on these dictionary definitions to claim that the plain and ordinary meaning of "attest" is to " 'affirm' the truth or accuracy of a particular fact or object." But in order to affirm the truth or accuracy of the proposed initiative, it is axiomatic that *someone* must affirm the truth of the title and text included in the initiative. That act requires a signature.

In fact, the majority of the definitions of "attest" require a *signature,* a statement made *under oath,* someone *witnessing* the act, or some official *authentication* or *verification.* See Garner, Black's Law Dictionary (8th Ed.2004) 138, defining "attest" to mean "[t]o bear *witness*; *testify,*" "[t]o affirm to be true or genuine," and "to authenticate by *signing* as a *witness*"; Webster's Third New International Dictionary (1986) 141, which defines "attest" to include "to bear *witness* to," "affirm to be true or genuine," "to witness and authenticate by *signing* as a witness," "to *authenticate officially,*" "to establish or *verify* the usage of," "to be or stand as proof of," "to call to *witness,*" and "to put on *oath* or *solemn declaration*"; see, also, American Heritage Dictionary (4th Ed.2001) 119, defining "attest" as "[t]o affirm to be correct, true, or genuine, *esp. by affixing one's signature as a witness.*" (All emphasis added.)

*State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 358-59, 2004-Ohio-4960, 815 N.E.2d 1107, 1111, ¶¶ 22-25.

**{¶17}** According to the allegations in the mandamus complaint, the Meigs County Home Rule Committee filed its petition with the Meigs County Board of Elections on Wednesday, June 24, 2015, two days before the 130-day deadline of Friday, June 26, 2015. On July 2, 2015, four days before the 120-day deadline of July 6, the Board

of Elections sent a letter signed by both its Director and the Deputy Director to the

Board of Commissioners.  The letter stated that a referendum petition was filed by the

Home Rule Committee on June 24, 2015 with the Board of Elections.  It further stated:

> These petitions have been examined and the required number of
> signatures was found to be sufficient as evidence by the attached report.
>
> The next step is for the Board of County Commissioners to adopt a
> resolution certifying the petition to the board of elections (see attached
> pages from the Ohio Ballot Quesitons and Issue Handbook).

The attached report provided the number of required signatures, the number of valid

signatures, and the details of the invalid signatures, including a breakdown of the

reasons for the invalidity of each signature. The report concludes, "PETITION

VERIFIED:  Required number of signatures validated."

{¶18}  On July 9, 2015, the Board of Commissioners sent a letter to the Board of

Elections stating that it had received the July 2, 2015 letter and discussed it at their July

9, 2015 board meeting. The Board of Commissioners identified what it believed were

three deficiencies in the July 2 letter: (1) the letter did not certify whether the petition

had "sufficient valid signatures," (2) there was nothing in the letter concerning the

validity of the petition itself, and (3) there was no certification from the Board of

Elections showing its certification:

> While it appears that you have the sufficient number of signatures, there is
> not attached a certificate from the board of elections regarding "sufficient
> valid signatures" as required by ORC 307.94, further there is nothing in
> the letter regarding the validity of the petition itself or a certificate from the
> board of elections showing its certification.

The Board of Commissioners stated that it would table the petition until a special

meeting on July 14, 2015 at 11:00 a.m. to give the Board of Elections time to comply

with R.C. 307.94.

{¶19} The Board of Elections responded with a second letter on July 13, 2015. The July 13 letter was identical to the July 2, 2015 letter except that it was signed individually by each of the four members of the Board of Elections and included the statements:

> The Meigs County Board of Elections voted as to the form on the face of the petition and to the valid and sufficient number of signatures (567 signatures required and 637 valid). Both motions carried.

{¶20} The Committee argues that the July 13 letter remedies the three deficiencies identified by the Board of Commissioners. It argues that the two phrases "voted as to the form on the face of the petition" and "motions carried" means that the Board of Elections examined the petition for conformity with R.C. 307.95 and R.C. 3501.38 and certified that the petition itself was valid, curing one of the three deficiencies. The Committee also argues that the phrase "valid and sufficient number of signatures" addressed the Commissioners' concerns that the July 2 letter certified the sufficient number of signatures, but not the validity of the signatures. Finally, the Committee argues that the signatures of all four board members addressed the Commissioners' perceived need for "a certificate from the board of elections showing its certification."

{¶21} At a special meeting on July 14, 2015, the Commissioners discovered that the Board of Elections July 13 letter was untimely and could not be acted upon. Under R.C. 307.94, the Commissioners' legal obligation to certify the petition by resolution to the Board of Elections is triggered if it receives a properly certified petition from the

Board of Elections not later than 120 days before the general election. The 120th day was July 6, 2015. The July 13 letter was not submitted to the Commissioners before the 120-day deadline; it was seven days late.

**{¶22}** We disagree with the Board of Commissioners' position that the July 2, 2015 letter failed to certify "sufficient valid signatures." We find that the July 2 letter and report certified to the Board of Commissioners that the Board of Elections had examined the petition and confirmed that it contained sufficient valid signatures. The letter states that the petition contains the sufficient number of signatures and the attached report shows that the number of required signatures is 567 and the number of valid signatures is 637. R.C. 307.94 and R.C. 307.95 both expressly states that a report concerning the validity and invalidity of the signatures is to be prepared and submitted with the petition. The letter and report, when taken together, provide all of the information about the signatures that is required under the statute and satisfies R.C. 307.94. As discussed in more detail below, the letter is properly certified by the director and the deputy director as it bears both of these officials' signatures.

**{¶23}** Nevertheless, an examination of the signatures is only one part of the process under R.C. 307.94. The Board of Elections also must examine the petition and certify that it is valid. There is nothing in the letter that certifies whether the petition is valid or invalid. It only references the sufficiency and validity of the signatures.

**{¶24}** As to the claim that the July 2 letter does not contain a proper "certificate" of certification from the Board of Elections, we find no need to impose an additional non-statutory requirement to have a "certificate" of certification individually signed by all

board members of the Board of Elections. The case law interpreting the term "certify" does not require the board of elections to create a "certificate" showing certification. The petition is "certified" if it has been confirmed as meeting a standard or criteria and supported by signature. And while R.C. 3501.11 requires boards of elections to exercise their powers by majority vote, R.C. 307.94 does not require a description of that voting process be included in the report.[1] R.C. 307.94 requires a board of elections to "complete its examination of the petition and the signatures" and "submit a report . . . certifying whether the petition is valid or invalid and . . . whether there are sufficient valid signatures . . . ." Then, "If the petition is certified by the board of elections to be valid and to have sufficient valid signatures, the board of county commissioners shall forthwith . . . by resolution, certify the petition to the board of elections . . . ."

**{¶25}** The director and deputy director are appointed by the board of elections under R.C. 3501.11(D) and R.C. 3501.09 and are authorized to perform assigned duties in connection with the office under R.C. 3501.13 and R.C. 3501.14. After the Board of Elections determines by majority vote that both the petition and the signatures are sufficient and valid, there is nothing in R.C. 307.94 that prohibits the director and deputy director from preparing the report on behalf of the board of elections certifying that the petition meets these statutory requirements. Moreover, nothing in R.C. 307.94 requires that each individual board member serving on the Board of Elections sign the report or a separate "certificate" showing certification of a petition.

**{¶26}** The Supreme Court of Ohio has held, " '[c]ounty boards of elections are of

---

[1] We note that the record does not specify the date that the Board of Elections held its vote pursuant to R.C. 3501.11. However, in deciding the Commissioners' summary judgment motion, we construe the

statutory creation, and the members thereof in the performance of their duties must comply with applicable statutory requirements.' " *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 291, 2009-Ohio-5327, 915 N.E.2d 1215, 1218, ¶ 11; *Whitman v. Hamilton Cty. Bd. of Elections,* 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 12, quoting *State ex rel. Babcock v. Perkins*, 165 Ohio St. 185, 187, 59 O.O. 258, 134 N.E.2d 839 (1956). "[T]he settled rule is that election laws are mandatory and require strict compliance and that substantial compliance is acceptable only when an election provision expressly states that it is." *State ex rel. Myles v. Brunner*, 120 Ohio St.3d 328, 332, 2008-Ohio-5097, 899 N.E.2d 120, 123, ¶ 18, citing *State ex rel. Ditmars v. McSweeney*, 94 Ohio St.3d 472, 476, 764 N.E.2d 971 (2002).  If a statute does not strictly require that an act be done, the courts cannot require it. *State ex rel. Myles v. Brunner*, 120 Ohio St.3d 328, 332, 2008-Ohio-5097, 899 N.E.2d 120, 123-24, ¶ 21 ("Because the statute also does not strictly require that the box next to the qualified-elector statement be marked, we cannot require it."); *State ex rel. Columbia Reserve Ltd. v. Lorain Cty. Bd. of Elections,* 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 32 ("We will not add a requirement that does not exist in the statute"). Moreover, we "must avoid unduly technical interpretations that impede the public policy favoring free, competitive elections." *State ex rel. Myles v. Brunner*, 120 Ohio St.3d 328, 332, 2008-Ohio-5097, 899 N.E.2d 120, 124, ¶ 22;*State ex rel. Ruehlmann v. Luken*, 65 Ohio St.3d 1, 3, 598 N.E.2d 1149 (1992).

{¶27}  Based upon the language in R.C. 307.94 and the case law governing election laws, we find that the Board of Elections failed to properly certify that the

---

evidence most strongly in the Committee's favor and assume the vote was held on or before July 2, 2015.

petition itself was valid to the Board of County Commissioners on or before the 120-day deadline. The Committee concedes that the July 2 letter does not expressly state that the petition is valid, but it erroneously believes that this is not a requirement. Instead, it argues that the Board of Elections' determination that the petition is valid is made implicitly clear by its request that the Board of Commissioners adopt a resolution certifying the petition for the ballot:

> Although the July 2, 2015 letter does not expressly state that the Petition is valid, there is no requirement that it do so. The MCBOE's finding of validity is made clear by its request that MCC adopt a resolution certifying the Petition to the MCBOE for placement on the ballot.

We disagree with the Committee's interpretation of the requirements of R.C. 307.94.  The statute expressly states that the board of elections is to certify whether the petition is valid and whether it has sufficient valid signatures.  These are two separate requirements as evidence from the subsequent statement, "If the petition is certified by the board of elections to be invalid or to have insufficient valid signatures, *or both*, the petitioners' committee may protest such findings. . . ." (Emphasis added.) R.C. 307.94. The Board of Elections does not satisfy the express requirements of R.C. 307.94 by implying that the petition is valid by instructing the Commissioners that their next step is to adopt a resolution certifying the petition. Nor would it be appropriate for the Commissioners to infer the petition is valid in the absence of an express and clear statement.

**{¶28}**  We also reject the Committee's argument that the July 13 letter "ratifies" the July 2 letter and therefore extends back to the date of the Director and Deputy Director's original certification, making the July 2 certification proper and timely.  This

argument is based on the incorrect assumption that the July 2 letter is deficient only because it was signed by the Director and Deputy Director of the Board of Elections, rather than each of the several board members of the Board of Elections.  Under agent-principal law, a principal may ratify the acts of the agent performed beyond the agent's authority "and such ratification extends back to the doing of the unauthorized act by the agent and binds the principal from that time." *State ex rel. Riley Constr. Co. v. East Liverpool City School Dist. Bd. of Edn.,* 10 Ohio St.2d 15, 29, 225 N.E.2d 246 (1967).  The problem with the July 2 letter is not that it exceeded the Director and Deputy Director's authority, but that it failed to certify the validity of the petition itself.  Therefore, there is no certification made in the July 2 letter that the July 13 letter can relate back to and ratify.

**{¶29}**  The Committee also argues that the Commissioners are estopped from using its own "delay tactics" as an excuse not to pass a resolution certifying the petition.  However, we find no evidence of delay tactics by the Commissioners.  First, we note that the Committee filed the petition with the Board of Elections on June 24, two days within the 130-day deadline, giving the Board of Elections 12 days to complete its duties. The Board of Elections acted promptly, sending its letter on July 2. The record does not indicated whether the letter was hand-delivered or sent via U.S. Mail to the Commissioners.  However, in its motion for summary judgment the Board of Commissioners stated that the letter was received on July 2, sometime after their regular meeting was adjourned and the members disbursed. Independence Day was observed on July 3rd due to it falling on a Saturday.  Monday, July 6 was the 120-day

deadline for the Board of Elections to submit a proper certification of the petition and the signatures to the Board of Elections. Therefore, unless the Commissioners notified the Board of Elections of its position on July 6, there was no time for the Board of Elections to certify the petition itself before the 120-day deadline of July 6. The Commissioners argue that it was impossible for them to act prior to July 7 because they would have to have scheduled a special meeting for July 7 and distribute notices for the meeting on July 6 to the press. Under these facts, there was no delay, unreasonable or otherwise. We note that the 130-day deadline in the statute is the *last* possible day on which the Committee may act – nothing prevents the Committee from filing its petition with the Board of Elections earlier so that matters can be addressed without needless urgency and against the backdrop of a holiday weekend.

**{¶30}** The right of the electors to petition for county charter is an important one, established and preserved by the Ohio Constitution. "The requirements for referendum petitions provide the mechanics for securing the ultimate and important goal of the legitimate obtaining of a voted expression of the will of the electorate. Courts should strive to nurture and preserve the integrity of the right of referendum." *Markus v. Trumbull Cty. Bd. of Elections*, 22 Ohio St.2d 197, 200, 259 N.E.2d 501, 503 (1970).

**{¶31}** However, under these circumstances the Meigs County Board of Commissioners did not have a legal duty under R.C. 307.94 to adopt a resolution allowing the question of whether to adopt a county charter to be submitted to the electors. " '[T]he settled rule is that election laws are mandatory and require strict compliance and that substantial compliance is acceptable only when an election

provision expressly states it is.' " *State ex rel. Edwards Land Co., Ltd. v. Delaware Cty. Bd. of Elections,* 129 Ohio St.3d 580, 2011-Ohio-4397, 954 N.E.2d 1193, ¶ 41, quoting *State ex rel. Ditmars v. McSweeney,* 94 Ohio St.3d 472, 476, 764 N.E.2d 971 (2002) (plurality opinion).

**{¶32}** Because R.C. 307.94 does not state that substantial compliance is acceptable, its requirements must be strictly followed. The Meigs County Board of Elections did not certify the petition and the signatures within the 120-day time period as required by R.C. 307.94. "And although the court liberally construes the rights of initiative and referendum, we will not do so when the applicable statutory requirements are—as here—not satisfied." (Citations omitted.) *State ex rel. Davis v. Beaver Twp. Bd. of Trustees*, 133 Ohio St.3d 170, 173, 2012-Ohio-4177, 977 N.E.2d 578, 581-82, ¶¶ 12-13. Therefore, the Relator does not have a clear legal right to the requested extraordinary relief, nor is there a corresponding clear legal duty on the part of the Board of Commissioners to provide it.

Conclusion

**{¶33}** Based on the foregoing, the Relator has not established by the requisite clear and convincing evidence that it is entitled to a writ of mandamus to compel the Meigs County Board of Commissioners to adopt a resolution pursuant to R.C. 307.94 causing the Meigs County Board of Elections to submit to the electors the question of whether the county should adopt a charter. We **DENY** relator's motion for summary judgment, **GRANT** respondent's motion for summary judgment, relator's motion to expedite proceedings is **GRANTED,** respondent's motion to stay proceedings is

**DENIED**.  **DENY** the writ and **DISMISS** the action.

{¶34}  The clerk shall serve a copy of this order on all counsel of record and any

unrepresented parties at their last known addresses by ordinary mail.

**RELATOR'S SUMMARY JUDGMENT MOTION DENIED. RESPONDENT'S**

**MOTION GRANTED. RELATOR'S MOTION TO EXPEDITE GRANTED.**

**RESPONDENT'S MOTION TO STAY DENIED. WRIT DENIED. PETITION**

**DISMISSED. COSTS TO RELATOR. IT IS SO ORDERED.**

Hoover, P.J., & McFarland, A.J.:  Concur.


                                              **FOR THE COURT**

                                              _____
                                              William H. Harsha, Judge


                                      **NOTICE**

        **This document constitutes a final judgment entry and the time period for appeal commences from the date of filing with the clerk.**

        **Pursuant to Civ.R. 58(B), the clerk is ORDERED to serve notice of the judgment and its date of entry upon the journal on all parties who are not in default for failure to appear.  Within three (3) days after journalization of this entry, the clerk is required to serve notice of the judgment pursuant to Civ.R. 5(B), and shall note the service in the appearance docket and indicate the names and addresses of the parties it is serving, the method of service, and the costs associated with the service.**