[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Meigs Cty. Home Rule Commt. v. Meigs Cty. Bd. of Commrs.*, Slip Opinion No. 2016-Ohio-5658.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5658

THE STATE EX REL. MEIGS COUNTY HOME RULE COMMITTEE ET AL.,

APPELLANTS, *v*. MEIGS COUNTY BOARD OF COMMISSIONERS ET AL.,

APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Meigs Cty. Home Rule Commt. v. Meigs Cty. Bd. of Commrs.*, Slip Opinion No. 2016-Ohio-5658.]**

*Elections—Initiative—Proposed county charter—Board of elections' initial letter to county commissioners certifying petition satisfied requirements of R.C. 307.94—Court of appeals' judgment denying writ of mandamus reversed— Writ granted, compelling placement of proposed charter on ballot.*

(No. 2015-1719—Submitted May 3, 2016—Decided September 6, 2016.)

APPEAL from the Court of Appeals for Meigs County,

No. 15CA9, 2015-Ohio-3701.

_____

**Per Curiam.**

{¶ 1} Relators-appellants, the Meigs County Home Rule Committee and its members, Paul K. Strauss, Gregory D. Howard, Dennis Jay Sargent, Kathy Lynn Sargent, and Marsha Nagy Whitton ("the committee") seek to place a proposed

county charter on the November 2016 ballot. Respondents-appellees, the Meigs County Board of Commissioners and its members, Michael Bartrum, Randy Smith, and Tim Ihle ("the commissioners") refused to certify the committee's initiative petition for placement on the ballot. The commissioners' refusal was not due to any error or omission by the committee but rather, was because the county board of elections allegedly missed a statutory deadline.

{¶ 2} The committee filed suit in the Fourth District Court of Appeals, seeking a writ of mandamus, which the court denied. We reverse the judgment of the court of appeals and grant the writ.

*The evidence in the record*

{¶ 3} The committee circulated a petition proposing the adoption of a charter for Meigs County. On June 24, 2015, the committee submitted the petition to the Meigs County Board of Elections.

{¶ 4} By statute, a board of elections must submit a report to the county's board of commissioners "certifying whether [a] petition [proposing the adoption of a county charter] is valid or invalid and, if invalid, the reasons for invalidity, whether there are sufficient valid signatures, and the number of valid and invalid signatures." R.C. 307.94. The report must be submitted to the board of commissioners at least 120 days before the date of the general election. *Id*.

{¶ 5} On July 2, 2015, the Meigs County Board of Elections sent a letter to the commissioners. The letter read:

Dear Commissioners:

This letter is to inform you that the referendum petition for * * * Home Rule by Charter was filed with the Meigs County Board of Elections on Wednesday, June 24, 2015 by the Meigs County Home Rule Committee. Th[is] petition[ ] ha[s] been examined and

2

the required number of signatures was found to be sufficient as evidenced by the attached report.

The next step is for the Board of County Commissioners to adopt a resolution certifying the petition to the board of elections (see attached pages from the Ohio Ballot Questions and Issues Handbook).

We look forward to hearing from you.

The attached report listed the required number of signatures, the total number of signatures submitted, the number of valid signatures, and the reasons some signatures were invalidated. The report concluded: "PETITION VERIFIED: Required number of signatures validated."

{¶ 6} On July 9, 2015, the commissioners responded in writing to the elections board, stating that the board's July 2 letter was incomplete:

While it appears that you have [verified a] sufficient number of signatures, there is not attached a certificate from the board of elections regarding "sufficient valid signatures" as required by ORC 307.94[;] further there is nothing in the letter regarding the validity of the petition itself or a certificate from the board of elections showing its certification.

The commissioners voted to table the matter until a special meeting it had scheduled for July 14, because "[i]t appears that we are lacking any type of certification from the board of elections to proceed further."

{¶ 7} The board of elections responded with a letter dated July 13, which again verified the sufficiency of the signatures. But this time, the elections board's letter stated that it had voted "as to form on the face of the petition." In addition,

the board this time indicated the numbers of valid and required signatures in the text of the letter itself.

{¶ 8} At its July 14 special meeting, however, the commissioners determined that the 120th day before the election—that is, the deadline by which the board of elections had to certify the validity and sufficiency of the petition— was July 6, 2015. Because the commissioners determined that "the BOE failed to act within the required time frame the issue * * * died for lack of motion."

*Procedural history*

{¶ 9} The committee and its members filed in the Fourth District Court of Appeals a petition for a writ of mandamus against Meigs County and the commissioners. On September 9, 2015, the court of appeals granted the commissioners' motion for summary judgment and denied the writ. 2015-Ohio-3701, 44 N.E.3d 950.

{¶ 10} On September 21, 2015, the committee filed a motion for reconsideration. The court of appeals denied the motion on October 13, 2015.

{¶ 11} On October 23, 2015, the committee filed a timely notice of appeal from both the summary-judgment order and the denial of the motion for reconsideration. The committee filed a merit brief on December 14, 2015. However, the brief contained an error in the certificate of service, as a result of which the commissioners were not put on notice that their merit brief was due.

{¶ 12} The committee eventually filed in this court a corrected certificate of service and properly served its brief. On February 16, 2016, the commissioners filed a combined motion to strike the committee's merit brief based on the service error and a motion to dismiss the appeal for mootness. On March 4, 2016, we denied the motion to strike and ordered the parties to finish briefing the appeal. 145 Ohio St.3d 1404, 2016-Ohio-804, 46 N.E.3d 699.

{¶ 13} In the meantime, on February 29, 2016, the committee filed a motion for leave to file an untimely affidavit in opposition to the commissioners' motion to strike. We deny that motion as moot.

{¶ 14} Pursuant to this court's March 4, 2016 order, the commissioners filed a merit brief on April 4, 2016, and the committee filed a reply brief on April 18, 2016.

*Legal analysis*

{¶ 15} The board of elections submitted its July 2, 2015 letter to the commissioners more than 120 days before the election; therefore, the report was timely. The pivotal issue in this case is whether this letter satisfied the other requirements of R.C. 307.94.

{¶ 16} As indicated above, the commissioners alleged two defects in the letter. The first claim—that the July 2 letter lacked a certification of the "sufficient valid signatures"—was rejected by the court of appeals. 2015-Ohio-3701, 44 N.E.3d 950, at ¶ 22. The commissioners have not cross-appealed, and so we assume that the letter satisfied this requirement.

{¶ 17} However, the court of appeals agreed with the commissioners that the board of elections did not certify the validity of the petition itself before the 120-day deadline. *Id*. at ¶ 27. According to the court, there was "nothing in the [July 2] letter that certifies whether the petition is valid or invalid." *Id*. at ¶ 23. The court then held that absent such a certification, the commissioners had no legal duty to adopt a resolution allowing the petition to appear on the ballot. *Id*. at ¶ 32.

{¶ 18} In this respect, the court of appeals erred. R.C. 307.94 does not mandate specific language that a board of elections must use to certify the validity of a county-charter petition. The July 2 letter from the board of elections plainly stated "PETITION VERIFIED" as well as "[r]equired number of signatures validated." In addition, the letter informed the commissioners that the petition had

been examined and that the next step was passage of a ballot resolution. The plain intent of the letter was to certify both the validity and the sufficiency of the petition.

**{¶ 19}** Based on its assumption that the board of elections' July 2 letter was insufficient, the court of appeals went on to hold that the elections board's July 13 letter could not cure the defect because it arrived after the deadline and R.C. 307.94 demands strict compliance. 2015-Ohio-3701, 44 N.E.3d 950, at ¶ 21, 32. But even if the first letter were insufficient, when the board of elections ultimately certifies the validity of a petition and the delay was not the fault of the initiative's supporters, a writ of mandamus will issue to place the matter on the ballot. *State ex rel. Stern v. Quattrone*, 68 Ohio St.2d 9, 426 N.E.2d 1389 (1981). Any other result would be unfair and thwart the constitutional right of initiative.

**{¶ 20}** Alternatively, the commissioners argue that this court should not issue a writ commanding the board of elections to place the petition on the November 2016 ballot, because doing so would deny opponents of the charter an opportunity to file a protest. But the commissioners never explain why granting the requested relief would preclude a protest. We therefore reject this contention.

*Mootness*

**{¶ 21}** Alternatively, the commissioners ask us to dismiss the appeal for mootness, based on our decision in *State ex rel. Walker v. Husted*, 144 Ohio St.3d 361, 2015-Ohio-3749, 43 N.E.3d 419. *Walker* held that it was not an abuse of discretion for the secretary of state to invalidate county-charter provisions on the grounds that they did not set forth a proposed form of county government. *Id*. at ¶ 24. According to the commissioners, "[t]he charter petition in this case is almost identical to the one in the *Walker* case." "Hypothetically," the commissioners conclude, "if this same petition charter was refiled in Meigs County for the next election, the Meigs BOE would be obligated to deny certification based on the Secretary of State's Decision/Opinion and this Court affirming that decision."

6

**{¶ 22}** We hold that the mootness argument is misplaced. The legal issue in this case is what language a board of elections must use to satisfy the R.C. 307.94 certification requirement. *Walker* did not address, much less resolve, that question.

**{¶ 23}** The commissioners appear to suggest that resolution of the question in *this* case would be academic because *Walker* would require the commissioners to reject the petition in any event. But R.C. 307.94 imposes on county commissioners a purely ministerial function, which does not include passing on the substance of a county-charter petition. The task of determining the validity of a county-charter petition is assigned to the county's board of elections, not to its commissioners. *Walker* confirmed that the discretionary authority of *municipal* officials when processing petitions is limited to matters of form, not matters of substance. *Walker* at ¶ 10. Nothing in R.C. 307.94 purports to confer greater authority upon county commissioners than that enjoyed by municipal officials.

**{¶ 24}** Nor is it a foregone conclusion that the secretary of state will invalidate the initiative petition at issue in this case for the same reason that he invalidated the petitions in *Walker*. The record before the court is insufficient to determine whether the proposed Meigs County charter is identical in all relevant respects to the one at issue in *Walker*. More importantly, even if the two charters do appear to be the same, the significance of *Walker* is that it affirmed the secretary of state's discretionary authority to decide whether certain measures belong on the ballot. We will not intrude into the process before the secretary has had a chance to exercise his discretion.

*Conclusion*

**{¶ 25}** For the reasons set forth above, we reverse the judgment of the court of appeals and issue a writ of mandamus compelling the Meigs County Board of Commissioners to adopt a resolution placing the proposed charter on the November 8, 2016 general-election ballot.

Judgment reversed,

writ granted,

and motion denied.

O'CONNOR, C.J., and LANZINGER, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents, with an opinion joined by PFEIFER and KENNEDY, JJ.

————————————————

**O'DONNELL, J., dissenting.**

{¶ 26} Respectfully, I dissent.

{¶ 27} The court of appeals correctly concluded in this case that relators, the Meigs County Home Rule Committee and its members, had not established by clear and convincing evidence their entitlement to a writ of mandamus compelling the Meigs County Board of Commissioners to adopt a resolution pursuant to R.C. 307.94 to cause the county's board of elections to submit the charter adoption question to the electors.

{¶ 28} The board of elections in this case did not certify the petition and signatures within the 120 day time period as R.C. 307.94 mandates, thereby failing to satisfy the requirements of the statute. Here, the board of elections' initial, July 2, 2015 letter to the commissioners did not certify the validity of the petition, as required under R.C. 307.94. In a July 13, 2015 letter, the board of elections attempted to correct its omission, but that letter did not meet the 120 day statutory deadline.

{¶ 29} Accordingly, because relators have failed to establish entitlement to the writ, I would deny the writ and affirm the judgment of the appellate court

PFEIFER and KENNEDY, JJ., concur in the foregoing opinion.

————————————————

James Kinsman and Terry J. Lodge, for appellants.

Colleen S. Williams, Meigs County Prosecuting Attorney, and Jeremy Fisher, Assistant Prosecuting Attorney, for appellees.

————————————————