[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Weller v. Tuscarawas Cty. Bd. of Elections,* Slip Opinion No. 2019-Ohio-4300.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-4300

THE STATE EX REL. WELLER, APPELLANT, *v.* TUSCARAWAS COUNTY BOARD OF ELECTIONS, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Weller v. Tuscarawas Cty. Bd. of Elections,* Slip Opinion No. 2019-Ohio-4300.]

*Elections—Mandamus—Writ of mandamus sought to compel board of elections to certify appellant's name on November 2019 ballot as mayoral candidate for village of Sugarcreek—By failing to complete the nominating-petition portion of the part-petitions signed by electors, appellant failed to substantially comply with R.C. 3513.261 and to strictly comply with R.C. 3513.251—Court of appeals' judgment denying writ affirmed.*

(No. 2019-1348—Submitted October 11, 2019—Decided October 18, 2019.)

APPEAL from the Court of Appeals for Tuscarawas County, No. 2019 AP 09 0037, 2019-Ohio-4032.

_____

**Per Curiam.**

{¶ 1} Appellant, Clayton Weller, appeals the Fifth District Court of Appeals' judgment denying his request for a writ of mandamus ordering appellee, the Tuscarawas County Board of Elections, to certify Weller's name to the November 2019 ballot as a candidate for mayor of the village of Sugarcreek. We affirm the Fifth District's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} On June 21, 2019, Weller submitted his petition to the board. The petition was comprised of four part-petitions, all on Form No. 3-O, which is the form that the secretary of state has prescribed for candidates running for nonpartisan municipal offices. On each part-petition, Weller completed the statement-of-candidacy portion and the circulator-statement portion, but he left blank the nominating-petition portion, which precedes the lines on which electors place their signatures and states:

> We, the undersigned, qualified electors of the State of Ohio, whose voting residence is in the county, city, village, or township set opposite our names, hereby nominate [NAME OF CANDIDATE] as a candidate for election to the office of [OFFICE] in the City or Village of [NAME OF CITY OR VILLAGE] for the: [CHECK ONE] * * * full term or * * * unexpired term ending [unexpired term ending date], to be voted for at the next general election, and certify said person is, in our opinion, well qualified to perform the duties of the office or position to which the person desires to be elected.

On August 19, the board rejected Weller's petition because he had not completed the nominating-petition portions of the Form No. 3-O part-petitions.

**{¶ 3}** On September 9, Weller filed a complaint in the Fifth District seeking a writ of mandamus ordering the board to certify his name to the November ballot. 2019-Ohio-4032, ¶ 1.  Weller argued that (1) he had completed the statement-of-candidacy portions of his part-petitions and that the information omitted from the nominating-petition portion of Form No. 3-O is merely duplicative of the information in the statement-of-candidacy portion and (2) there was no strict requirement that he fill in the blanks in that portion of the Form No. 3-O and therefore, by completing the statement of candidacy, his petition substantially complied with R.C. 3513.261.  *Id*. at ¶ 6, 8.

**{¶ 4}** On September 30, the Fifth District denied the writ based on its conclusion that Weller's petition did not substantially comply with R.C. 3513.261. *Id*. at ¶ 14, 16.  The court reasoned that Weller's failure to complete the nominating-petition portion of Form No. 3-O "does not relate merely to the 'form' of the nominating petition, but goes to its very substance," *id*. at ¶ 12, and that Weller's omissions essentially "resulted in the signators nominating nobody as a candidate," *id*. at ¶ 10.

**{¶ 5}** Weller filed a notice of appeal on October 3.  He also filed a motion to expedite, which we granted.  __ Ohio St.3d __, 2019-Ohio-4095, __ N.E.3d __.

## II.  ANALYSIS

### A.  *Mandamus Standard*

**{¶ 6}** Weller is entitled to a writ of mandamus if he establishes by clear and convincing evidence that (1) he has a clear legal right to have his name placed on the ballot, (2) the board has a clear legal duty to place his name on the ballot, and (3) he lacks an adequate remedy in the ordinary course of the law.  *State ex rel. Davis v. Summit Cty. Bd. of Elections*, 137 Ohio St.3d 222, 2013-Ohio-4616, 998 N.E.2d 1093, ¶ 12.  Because of the proximity of the November election, Weller lacks an adequate remedy in the ordinary course of the law.  *See State ex rel.*

*Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18.

**{¶ 7}** With respect to the remaining elements, courts look to whether the board has "engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11. Weller does not allege fraud or corruption, so the question is whether the board abused its discretion or clearly disregarded applicable law. A board abuses its discretion when it acts in an "unreasonable, arbitrary, or unconscionable fashion." *State ex rel. McCann v. Delaware Cty. Bd. of Elections*, 155 Ohio St.3d 14, 2018-Ohio-3342, 118 N.E.3d 224, ¶ 12.

### B. Nominating Petitions

**{¶ 8}** "[T]he general rule is that unless there is language allowing substantial compliance, election statutes are mandatory and must be strictly complied with." *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 15.

**{¶ 9}** R.C. 3513.251 states, "Nomination of nonpartisan candidates for election as officers of a municipal corporation having a population of two thousand or more, as ascertained by the next preceding federal census, *shall be made only by nominating petition*." (Emphasis added.)[1] R.C. 3513.251 does not contain language permitting substantial compliance. It therefore imposes a mandatory, strict requirement that Weller's nomination as a candidate for election as mayor of Sugarcreek be made by nominating petition.

---

1. Sugarcreek's population was recorded as 2,220 in the 2010 census, *see* United States Census Bureau, American FactFinder, available at https://factfinder.census.gov/faces/nav /jsf/pages/community_facts.xhtml.

**{¶ 10}** R.C. 3513.261 provides that nominating petitions "shall be *substantially* in the form prescribed in this section." (Emphasis added.) Thus, the statute "requires only substantial compliance with the prescribed 'form' of the nominating petition, but [it] contains no language regarding substantial compliance as to other matters." *State ex rel. Simonetti v. Summit Cty. Bd. of Elections*, 151 Ohio St.3d 50, 2017-Ohio-8115, 85 N.E.3d 728, ¶ 26.

**{¶ 11}** Weller was therefore required to strictly comply with the requirement that his nomination to office be achieved by nominating petition and to substantially comply with the statutory form of the nominating petition. The parties appear to have overlooked R.C. 3513.251; they have briefed only the question whether Weller substantially complied with R.C. 3513.261. We agree with the Fifth District that Weller's submission of part-petitions on which he did not complete the nominating-petition portions of Form No. 3-O constituted a failure to substantially comply with R.C. 3513.261. Under the facts of this case, in which Weller utilized the form prescribed by the secretary under R.C. 3513.261, his failure to substantially comply with R.C. 3513.261 means that he has also failed to strictly comply with R.C. 3513.251.

**{¶ 12}** In *State ex rel. Allen v. Lake Cty. Bd. of Elections*, 170 Ohio St. 19, 161 N.E.2d 896 (1959), the relator had submitted four part-petitions with invalid circulator's affidavits.[2] *Id*. at 20. The relator argued that "since the only requirement for a circulator's affidavit appears in the statutory form and * * * the statute requires only that a nominating petition form shall be *substantially* the same as the statutory form, the circulator's oath is not an essential part of the petition paper." (Emphasis sic.) *Id*. This court rejected that argument, stating, "Substantial compliance does not contemplate complete omission." *Id*. The court further explained:

---

2. At the time, what is now the circulator's statement was required to be a circulator's affidavit. *Allen* at 19, citing the version of R.C. 3513.261 then in effect.

The statutory form, like any suggested statutory form, need not be followed absolutely as to its wording. The statute [prescribing the form] itself provides for only substantial compliance. However, as we have said, substantial compliance would not warrant complete omission of the jurat of the circulator. Such jurat is a *vital and material part of the nominating petition paper*, and its inclusion is a condition precedent to the acceptance and validation of a candidate's nominating petition paper by a board of elections.

*Id*. (Emphasis added.)

{¶ 13} In *State ex rel. Wilson v. Hisrich*, 69 Ohio St.3d 13, 630 N.E.2d 319 (1994), the relator had filed one part-petition that contained a declaration of candidacy and had attached to it three additional part-petitions that did not contain declarations of candidacy. *Id*. at 15. This court held that this violated R.C. 3513.09's strict requirement that the signed declaration of candidacy "shall be copied on each other separate petition paper." *Wilson* at 15-16. The relator argued that R.C. 3513.07, which prescribed the applicable petition form, required only substantial compliance and that he had met that requirement in light of affidavits from all of the signers of his petition averring that they were shown the declaration of candidacy when they signed the part-petitions. *Id*. at 16. This court disagreed, explaining, "R.C. 3513.07 may be satisfied by substantial compliance with the form of a declaration of candidacy and petition, but the omission of the entire declaration from three petition papers would hardly qualify as substantial compliance." *Id*.

{¶ 14} Weller points out that he completed the statement-of-candidacy portions of his part-petitions and that all of the information that he would have added to the nominating-petition portion of Form No. 3-O was included in his statement of candidacy on the same form. However, it is apparent from the

6

language and structure of R.C. 3513.261 and the form of the "nominating petition *and* statement of candidacy" set forth therein that the nominating petition and the statement of candidacy are different components of a part-petition that serve different purposes. (Emphasis added.) In the statement of candidacy, the *candidate* declares to the petition signers his intention to seek a particular office and attests to his qualifications. *Id.* ("I [name of candidate] * * * hereby declare that I desire to be a candidate for election to the office of [name of office] * * * "). In the nominating petition, the *petition signers* declare to the board of elections their desire to nominate the candidate to the office that he seeks. *Id.* ("We, the undersigned * * * hereby nominate [name of candidate] as a candidate for election to the office of [name of office] * * *").

{¶ 15} Because the statement-of-candidacy portion of the form contains no language actually *nominating* the candidate to office, we conclude that the nominating-petition portion of the form is a "vital and material part of the nominating petition paper," *Allen*, 170 Ohio St. at 20, 161 N.E.2d 896, and that Weller's submission of Form No. 3-O part-petitions that omitted his name and the office he sought from the nominating-petition portion of the forms did not amount to substantial compliance with R.C. 3513.261. Our conclusion is bolstered by R.C. 3513.251's mandate that a nominating petition is the only vehicle through which Weller could achieve nomination to office, although this court reached its conclusion in *Allen* even in the absence of such a strict requirement.

{¶ 16} Under the facts of this case, in which Weller utilized Form No. 3-O, his failure to substantially comply with R.C. 3513.261 means that he also failed to strictly comply with R.C. 3513.251's mandate that he be nominated to office via nominating petition; Weller cannot be nominated to office solely by Form No. 3-O's statement of candidacy.

{¶ 17} Weller argues that no one who signed his petition was misled or confused about who the form was nominating as a candidate for mayor, because he

is a two-term incumbent mayor, he is well known in Sugarcreek, he was the sole circulator of his own part-petitions, and the information missing from the nominating petition was present in the statement of candidacy. However, this argument is similar to the argument this court rejected in *Wilson*—that the petition signers all saw the missing declaration of candidacy—and in *Wilson* there were affidavits from the petition signers, not just from the candidate. 69 Ohio St.3d at 16, 630 N.E.2d 319. Regardless, Weller did not comply with the statutory requirements, so this argument is irrelevant.

{¶ 18} The cases Weller cites in support of his argument are distinguishable because in each case, there was no requirement that the information that was omitted from or incorrectly stated on the part-petition be included. *See State ex rel. Phillips v. Lorain Cty. Bd. of Elections*, 62 Ohio St.3d 214, 217, 581 N.E.2d 513 (1991); *State ex rel. Phillips v. Lorain Cty. Bd. of Elections*, 93 Ohio St.3d 535, 540, 757 N.E.2d 319 (2001); *State ex rel. Stewart v. Clinton Cty. Bd. of Elections*, 124 Ohio St.3d 584, 2010-Ohio-1176, 925 N.E.2d 601, ¶ 38. Here, by contrast, R.C. 3513.251 mandates that Weller be nominated by nominating petition.

### III. CONCLUSION

{¶ 19} For the foregoing reasons, we affirm the judgment of the Fifth District denying the writ.

Judgment affirmed.

FISCHER, DEWINE, and STEWART, JJ., concur.

O'CONNOR, C.J., concurs, with an opinion joined by STEWART, J.

KENNEDY, J., dissents, with an opinion.

FRENCH and DONNELLY, JJ., dissent.

_____

**O'CONNOR, C.J., concurring.**

{¶ 20} I join the majority opinion. I write separately in response to the basic contention of the dissenting opinion that we should "let the people vote," dissenting

opinion at ¶ 25, and the suggestion that the majority's decision undermines the right to vote. I too am a proponent of the right to vote. However, this appeal does not involve one's right to vote. Rather, the central issue in this case is the right of a candidate to appear on the ballot.

{¶ 21} The dissenting opinion contends that " 'any restrictions on the [right to vote] strike at the heart of representative government.' " *Id*. at ¶ 42, quoting *Reynolds v. Sims*, 377 U.S. 533, 555, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). However, that view creates a tension between our right to vote and the rule of law. The rule of law plainly requires that appellant Clayton Weller's nomination be made only by a nominating petition, R.C. 3513.251, and that the nominating petition be substantially in compliance with the form prescribed in R.C. 3513.261.

{¶ 22} The dissenting opinion seemingly conflates the requirement of substantial compliance as to the form of the nominating petition, which is all that R.C. 3513.261 addresses, with strict compliance as to its substance and contents. This distinction is one the court unanimously recognized in *State ex rel. Simonetti v. Summit Cty. Bd. of Elections*, 151 Ohio St.3d 50, 2017-Ohio-8115, 85 N.E.3d 728, when addressing the relator's contention that public policy favors " 'free competitive elections' over 'absolute compliance with each technical requirement in the petition form.' " *Id*. at ¶ 25, quoting the relator's brief. We held,

> Here, R.C. 3513.261 provides that a nominating petition "shall be substantially in the form prescribed in this section." Thus, the statute requires only substantial compliance with the prescribed "form" of the nominating petition, but the statute contains no language regarding substantial compliance as to other matters.

*Id.* at ¶ 26. As Weller's nominating petition pictured in the dissenting opinion clearly illustrates, there was simply no compliance whatsoever because the contents

of the nominating petition that precedes the electors' signatures is entirely blank. Simply because the secretary of state chose to combine the statement of candidacy and the nominating petition into one form does not repudiate the statute's requirement of strict compliance as to content. It is our duty to follow the election laws of this state regardless of whether they lead us to the result we desire.

{¶ 23} "As we have consistently held, ' "[c]ounty boards of elections are of statutory creation, and the members thereof in the performance of their duties must comply with applicable statutory requirements." ' " *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 11, quoting *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 12, quoting *State ex rel. Babcock v. Perkins*, 165 Ohio St. 185, 187, 134 N.E.2d 839 (1956). So too must we.

{¶ 24} To hold county boards of election to a standard other than what the General Assembly has prescribed does not promote the public policy favoring free, competitive, and fair elections but, rather, opens the door to allowing county boards and the judiciary to ignore the rule of law and play to subjective evaluation or political whims. I therefore concur in the court's judgment affirming the Fifth District Court of Appeals' judgment denying the writ.

STEWART, J., concurs in the foregoing opinion.

——————————

**KENNEDY, J., dissenting.**

{¶ 25} Because I would let the people vote, I dissent and would reverse the judgment of the Fifth District Court of Appeals and grant the writ.

{¶ 26} R.C. 3513.261 requires nominating petitions to be in substantial compliance with the form set out in the statute, and for more than 50 years, we have recognized that the determination whether a petition substantially complies with the form depends on whether a petition signer would be misled by an error or omission in the petition, whether there was fraud or deception perpetrated, and

whether there was sufficient compliance for the board of elections to determine that the petition is valid. *See Stern v. Cuyahoga Cty. Bd. of Elections*, 14 Ohio St.2d 175, 184, 237 N.E.2d 313 (1968); *State ex rel. Stewart v. Clinton Cty. Bd. of Elections*, 124 Ohio St.3d 584, 2010-Ohio-1176, 925 N.E.2d 601, ¶ 28.

{¶ 27} Applying this standard here, appellant Clayton Weller's petition to be a candidate for mayor of the village of Sugarcreek on the November ballot sufficiently conformed with R.C. 3513.261. He complied with the express requirements of the statute by completing and signing the candidate's statement of candidacy and the circulator's statement, and a sufficient number of qualified electors signed the petition and provided their voting-residence address and date of signing. And although he failed to fill in the blanks of the nomination section of the petition with the same information that appears in his candidate's statement, neither the statute nor the form itself expressly instructed him to do so. And Weller substantially complied with the form set out in R.C. 3513.261. A review of the petition reveals that no elector would be misled in nominating a candidate when the candidacy statement is included at the top of the form. Moreover, there is no claim of fraud or deception, and there is no doubt that the electors who signed the petition intended to nominate Weller as a candidate for mayor of Sugarcreek and were qualified to do so. I therefore would reverse the judgment of the court of appeals and grant a writ of mandamus compelling the Tuscarawas County Board of Elections to place Weller on the November ballot for mayor of the village of Sugarcreek.

**Facts and Procedural History**

{¶ 28} Weller submitted four part-petitions to the board of elections in order to be placed on the ballot for mayor of Sugarcreek. On each part-petition, Weller completed the statement of candidacy, but no one filled in the nomination section of the petition:

Form No. 3-O Prescribed by the Ohio Secretary of State (09-17)

# Nominating Petition and Statement of Candidacy

### For Nonpartisan Office Municipal Office

To be filed with the Board of Elections not later than 4 p.m. of the 90th day before the general election
R.C. 3501.38, 3515.251, 3513.261, 3513.263

Filing Date _____ 6-21-_
Petition Part # _____ 1/4
Total # of Signatures _____
# of Valid Signatures _____
# of Invalid Signatures _____
Checked by _____ EHI

## Statement of Candidacy

NOTE - The candidate must fill in, sign and date this statement of candidacy before the signatures of electors are affixed.

I, _Clayton Waller_, the undersigned, hereby declare under penalty of election falsification that my voting residence address is _962 Shane Dr. S.W._, _Sugarcreek_, Ohio _44681_,
Street Number and Address, if any, (or rural route and number)     City or Village     Zip Code
and I am a qualified elector.

I further declare that I desire to be a candidate for election to the office of _Mayor_ in
Office
the City or Village of _Sugarcreek_ for the:
Name of City or Village
Check one ☑ full term or ☐ unexpired term ending _____, in _____ County, Ohio at
Unexpired Term Ending Date     County
the general election to be held on the _5th_ day of November, _2019_.
Day     Year

I further declare that I am an elector qualified to vote for the office I seek.

Dated this _11_ day of _June_, _2019_. _Clayton Waller_
Day     Month     Year     Signature of Candidate

### WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELONY OF THE FIFTH DEGREE

I, _____, hereby designate the persons named below as a committee to represent me:
Name of Candidate

| Name | Residence |
|---|---|
|  |  |
|  |  |
|  | FILED |
|  | '19 JUN 21 AM 10:29 |
|  | TUSC CO BD ELECTION |

## Nominating Petition

We, the undersigned, qualified electors of the State of Ohio, whose voting residence is in the county, city, village, or township set opposite our names, hereby nominate _____ as a
Name of Candidate
candidate for election to the office of _____ in the City or Village of _____
Office
_____ for the: Check one ☐ full term or ☐ unexpired term ending _____.
Name of City or Village     Unexpired Term Ending Date
to be voted for at the next general election, and certify said person is, in our opinion, well qualified to perform the duties of the office or position to which the person desires to be elected.

Signatures on this petition must be from only one county and must be written in ink.

| Signature | Voting Residence Street Number and Address | City, Village, or Township | County | Date of Signing |
|---|---|---|---|---|

12

{¶ 29} Although no one filled in the blanks in the nomination section, electors nonetheless signed and dated the petition and provided their addresses. The petition had sufficient valid signatures and no protest was filed—in fact, no other candidate has submitted a valid petition—but the board of elections nonetheless rejected the petition because no one had filled in the blanks in the nomination section on any of the part-petition forms.

{¶ 30} The Fifth District Court of Appeals denied Weller's request for a writ of mandamus ordering the board to certify his name to the November ballot. 2019-Ohio-4032, ¶ 16. The court of appeals explained that the failure to complete the nomination section of the petition form "does not relate merely to the 'form' of the nominating petition, but goes to its very substance," because this part of the petition "identifies the person who is being nominated by the signators and the office being sought by the candidate." *Id*. at ¶ 12. The court concluded that Weller's failure to fill in the blanks of the nomination section essentially "resulted in the signators nominating nobody as a candidate." *Id*. at ¶ 10.

**Law and Analysis**

{¶ 31} The General Assembly has imposed specific requirements for a nominating petition in addition to providing a sample form. R.C. 3513.261 expressly requires each nominating petition to "contain a statement of candidacy * * * signed by the candidate" that includes "a declaration made under penalty of election falsification that the candidate desires to be a candidate for the office named in it, and that the candidate is an elector qualified to vote for the office the candidate seeks." Similarly, R.C. 3501.38(C) requires each signer of a petition to place the date of signing and the place of the signer's voting residence on the petition, while R.C. 3501.38(E)(1) requires the petition circulator to indicate the number of signatures contained on the petition and to sign a statement that the circulator witnessed every signature and that to the best of the circulator's

13

knowledge and belief, all signers were qualified to sign and all signatures are genuine.

{¶ 32} These are substantive requirements. The candidate's signed statement of candidacy is required to confirm that the candidate is willing to accept the nomination and serve in the elective office while also verifying that he or she is qualified to do so. The addresses of the signers and the date of signing are needed to confirm that each signer is eligible to nominate the candidate. And the circulator's statement is needed to protect against forged signatures. And this is why the Form No. 3-O promulgated by the secretary of state states in bold type that "[t]he candidate must fill in, sign and date this statement of candidacy before the signatures of electors are affixed" and that the circulator statement "[m]ust be completed and signed by the circulator."

{¶ 33} In one case on which the majority relies, *State ex rel. Wilson v. Hisrich*, 69 Ohio St.3d 13, 630 N.E.2d 319 (1994), we refused to order a board of elections to place a candidate's name on the ballot. The board had rejected his petition because it omitted the candidate's declaration of candidacy on three part-petitions, a flaw that involved such an express, substantive requirement that it affected the validity of the petition.

{¶ 34} In contrast, this court has held that a petition's failure to contain material included in the sample petition form but not expressly required by the statute does not necessarily invalidate a petition. For example, the sample form provided by R.C. 3513.261 (and the Form No. 3-O promulgated by the secretary of state) include space for the appointment of a committee to represent the candidate. In *State ex rel. Phillips v. Lorain Cty. Bd. of Elections*, however, we explained that even though the petition form included these blanks for the candidate to fill out, "R.C. 3513.261 does not expressly require the appointment of a committee." 62 Ohio St.3d 214, 216, 581 N.E.2d 513 (1991). Because the statute had been amended, "the express requirement to name a committee was gone, and only the

reference to the form of the petition remained." *Id*. Therefore, appointment of a committee was not mandatory and leaving those blanks empty did not invalidate the petition. *Id*. at 217.

{¶ 35} Similarly, neither the relevant statutes nor the form itself provides any specific instruction that the candidate, the signers, or the circulator must fill out the blanks in the nomination section of the petition. Rather, R.C. 3513.261 states only that

> [t]he form of the nominating petition * * * shall be substantially as follows:
>
>     * * *
>
>     We, the undersigned, qualified electors of the state of Ohio, whose voting residence is in the County, City, Village, Ward, Township or Precinct set opposite our names, hereby nominate .................... as a candidate for election to the office of .......................... in the ........................... (State, District, County, City, Village, Township, or School District) for the ................. (Full term or unexpired term ending ...................) to be voted for at the general election next hereafter to be held, and certify that this person is, in our opinion, well qualified to perform the duties of the office or position to which the person desires to be elected.

{¶ 36} The majority holds that another statute, R.C. 3513.251, not R.C. 3513.261, makes filling in the blanks in the nomination section subject to strict compliance. But that statute simply explains when a candidate for municipal office must be nominated by petition and when a municipality may use a primary election to nominate candidates. It says nothing about what specific language the candidate must use in circulating a nominating petition, nor does indicate whether filling in

the blanks of the nominating petition are subject to strict or substantial compliance. Moreover, the majority's conclusion that strict compliance applies is inconsistent with the plain language of R.C. 3513.261, which "expressly permits *substantial compliance* with the form of the nominating petition." (Emphasis sic.) *State ex rel. Phillips v. Lorain Cty. Bd. of Elections*, 93 Ohio St.3d 535, 539, 757 N.E.2d 319 (2001). And filling in the form exactly as specified in the sample form is a formal requirement, not a substantive one. Even the instructions given to county boards by the secretary of state recognize that "[t]he question of whether the board may certify a prospective candidate's petition when the 'Nominating Petition' portion of the form is incomplete is a substantial compliance decision for the board of elections to make in consultation with its legal counsel, the county prosecuting attorney." Secretary of State Directive 2019-17, Section 1.02, *Ohio Election Official Manual*, at 11-4.

{¶ 37} Importantly, we have explained that strict compliance is appropriate when " 'such complete and absolute conformance to each technical requirement of the printed form serves a public interest and a public purpose.' " *Stewart*, 124 Ohio St.3d 584, 2010-Ohio-1176, 925 N.E.2d 601, at ¶ 28, quoting *Stern*, 14 Ohio St.2d at 180, 237 N.E.2d 313. As we observed in *Stewart*:

> "The public policy which favors free competitive elections, in which the electorate has the opportunity to make a choice between candidates, outweighs the arguments for absolute compliance with each technical requirement in the petition form, where the statute requires only substantial compliance, where, in fact, the only omission cannot possibly mislead any petition signer or elector, where there is no claim of fraud or deception, and where there is sufficient substantial compliance to permit the board of elections, based upon prima facie evidence appearing on the face of the jurat

16

> which is part of the petition paper, to determine the petition to be valid."

*Id.*, quoting *Stern* at 184. Our decision in *State ex rel. Allen v. Lake Cty. Bd. of Elections*, 170 Ohio St. 19, 161 N.E.2d 896 (1959), on which the majority relies— and which upheld the rejection of a petition because the circulator's jurat included only in the statutory form was invalid—predates our adoption of this substantial-compliance standard.

{¶ 38} A nominating petition with an incomplete nomination section can constitute substantial compliance, because the signer's intent to nominate the candidate for the office and term indicated in the candidate's statement of candidacy is unambiguously manifested by the fact that the signer has affixed his or her signature to the nominating petition—there is no conceivable reason that an elector would sign a nominating petition if the elector did not genuinely intend to nominate the candidate. *See State ex rel. Myles v. Brunner*, 120 Ohio St.3d 328, 2008-Ohio-5097, 899 N.E.2d 120, ¶ 23 ("the 'only reason to complete the form was to obtain an absentee ballot for the November 4, 2008 election,' and signing it necessarily indicated that the applicant represented, 'I am a qualified elector and would like to receive an Absentee Ballot for the November 4, 2008 General Election,' regardless of whether the box next to the statement was marked").

{¶ 39} Further, any concerns that a petition signer or elector could be misled by the failure to fill in the blanks in the nomination section of the petition are dispelled when that information is wholly duplicative of information prominently included in the candidate's statement. *See Stewart* at ¶ 38 (noting that a signer would not be misled by the omission of the primary-election date on a declaration of candidacy). Nor does it invite fraud or deception, because a mismatch between the candidate's statement and the nomination section of the petition would attract a board's scrutiny and presumably result in the invalidation of the petition.

**{¶ 40}** In the last analysis, Weller met the express requirements of R.C. 3513.261: his nominating petition includes the signed candidate's statement, the signed circulator's statement, and sufficient signatures of electors with their voting-residence address and the date of signing. The nominating petition language appears only in the statute's sample form, and substantial compliance is therefore permissible. When there is no possibility that any elector could have been misled by the nominating petition he or she signed, when there is no claim of fraud or deception, and when there is no doubt that the signers of the petition intended to nominate Weller to be a candidate for mayor of Sugarcreek, substantial compliance has been established and the public interest would be served by allowing the petition.

## Conclusion

**{¶ 41}** Weller, the incumbent mayor of the village of Sugarcreek, circulated his own petition. A sufficient number of qualified electors signed that petition. No protest was brought against his candidacy. But now, the board's action removing the incumbent from the ballot based on the inadvertent failure to fill in all the blanks of the prescribed form means that the people of the village will be deprived of their right to vote for an individual who may be their candidate of choice for that office. *See* R.C. 3505.

**{¶ 42}** Rather than elevate form over substance and ignore reality, we should " 'avoid unduly technical interpretations that impede the public policy favoring free, competitive elections.' " *Myles*, 120 Ohio St.3d 328, 2008-Ohio-5097, 899 N.E.2d 120, at ¶ 22, quoting *State ex rel. Ruehlmann v. Luken*, 65 Ohio St.3d 1, 3, 598 N.E.2d 1149 (1992). After all, "[t]he right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). "Other rights,

even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964).

{¶ 43} For these reasons, I would reverse the judgment of the court of appeals and grant the requested writ.

_____

Baker, Dublikar, Beck, Wiley & Mathews, James F. Mathews, and Tonya J. Rogers, for appellant.

Ryan D. Styer, Tuscarawas County Prosecuting Attorney, and Robert R. Stephenson II, Assistant Prosecuting Attorney, for appellee.

_____